DEMALIAN JUSTICE, Plaintiff in Error, *vs.* JOHN S. STONE-
CIPHER *et al.* Defendants in Error.

*Opinion filed April 22, 1915.*

1. BILLS AND NOTES—*negotiability of a note indorsed in blank does not cease at maturity.* A promissory note indorsed in blank passes by delivery, and its negotiability does not cease at its maturity but the note can still be negotiated by indorsement.

2. SAME—*effect where a note indorsed in blank is overdue.* The mere fact that a promissory note indorsed in blank by the payee is overdue at the time the holder receives money thereon from a bank does not charge the bank with notice that the note is held for a special purpose or that there is any defect in the title. (*Y. M. C. A. Gymnasium Co.* v. *Rockford Nat. Bank,* 179 Ill. 599, followed; *Hide and Leather Bank* v. *Alexander,* 184 id. 416, and *Merchants' Loan Co.* v. *Welter,* 205 id. 647, distinguished.)

3. SAME—*section 59 of Negotiable Instruments act construed.* Section 59 of the Negotiable Instruments act does not mean that when the title of the holder of a note indorsed in blank, which has been accepted by a bank as collateral security, is shown to be defective the bank must prove that it accepted the note before it was overdue, but means that the bank must prove that at the time the note was negotiated to it it had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Marion county; the Hon. JAMES C. MCBRIDE, Judge, presiding.

BUNDY & WHAM, and HOLT & WILSON, for plaintiff in error.

KAGY & VANDERVOORT, for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

On May 13, 1912, Demalian Justice, the plaintiff in error, contemplating a somewhat extended absence from his home at Salem, Illinois, entrusted to one John S. Stone-cipher certain valuable papers, including certain promissory

notes executed by various parties and payable to plaintiff in error, all of which notes were indorsed in blank by plaintiff in error at the time they were delivered to Stonecipher. Upon the return of plaintiff in error to his home, on or about August 2, 1912, he attempted to regain possession of his papers, but learned that on June 6, 1912, Stonecipher had delivered a portion of the promissory notes to the Bridgeport State Bank of Bridgeport, Illinois, as security for a loan of $3000 which the bank on that day had made to Stonecipher, and that the latter had executed and delivered to the bank a collateral note, by which the bank was authorized by Stonecipher to sell the notes delivered as security and apply the proceeds upon the note for $3000. Thereafter the plaintiff in error, having failed to recover possession of the notes from the bank, filed his bill of complaint in the circuit court of Marion county against Stonecipher, the Bridgeport State Bank and certain other parties, alleging that on May 13, 1912, Stonecipher was engaged in the banking business under the name of Citizens' Bank of Salem, Illinois, and that the instruments delivered by plaintiff in error to Stonecipher on that day were delivered merely for safe keeping and return upon demand; that the delivery of the notes by Stonecipher to the Bridgeport State Bank as security for the $3000 loan made to Stonecipher was without authority from plaintiff in error and was in fraud of his rights; that said notes were past due when they were thus negotiated by Stonecipher, and that the Bridgeport State Bank, as against plaintiff in error, has no legal or equitable right to hold, negotiate or collect the same. The prayer of the bill, as against the Bridgeport State Bank, is for an accounting and for general relief. The Bridgeport State Bank answered the bill, denying the specific allegations thereof and averring that the notes in controversy were indorsed by plaintiff in error and transferred by him for a valuable consideration and became the property of the bank in the regular course

of business by purchase for a valuable consideration, made in good faith, without any knowledge of any claim of the plaintiff in error therein or thereto.

After hearing the evidence the court entered a decree finding that the notes delivered by Stonecipher to the Bridgeport State Bank as security for the $3000 loan were indorsed by plaintiff in error and delivered to Stonecipher for collection and safe keeping, and that by reason of the indorsement, transfer and delivery thereof Stonecipher had the power and authority to transfer the same to the Bridgeport State Bank; that the bank received said notes as collateral security for the loan of $3000 made to Stonecipher in the regular course of business and in good faith, without any knowledge or notice of any right, title or interest of plaintiff in error in or to the same; that the $3000 note given by Stonecipher to the bank is past due and unpaid, and that the bank has full power and authority and the legal right to collect the notes delivered to it as security and to apply the proceeds arising therefrom to the payment of its note for $3000. Based upon the foregoing findings it was adjudged by the court that the notes in controversy be held and retained by the Bridgeport State Bank and collected as collateral security for the payment of the note for $3000 given by Stonecipher to the bank on June 6, 1912, but if Stonecipher, or the trustee in bankruptcy of his estate, (he having been adjudged a bankrupt since the filing of the bill herein,) or plaintiff in error, should pay to the bank the sum of $3000 and accrued interest thereon, that then the bank should transfer and deliver said notes, and all moneys collected thereon, to plaintiff in error, or in case a portion of the notes or moneys arising therefrom should be sufficient to pay the said note for $3000, that then the bank should transfer and turn over to plaintiff in error any excess of moneys arising out of the payment of said notes held by the bank as collateral security. From this decree Justice appealed to the Appellate Court for the Fourth

District, where the decree was affirmed. A writ of *certiorari* having been granted upon the petition of plaintiff in error, the record has been brought here for review.

The testimony on behalf of plaintiff in error tended to show that he turned over the notes in controversy, together with other notes, to Stonecipher to hold for him and to receive the interest thereon during his absence from Salem, and at Stonecipher's suggestion he indorsed the notes when they were left with Stonecipher in order to show the makers that he had title and was empowered to collect the interest thereon, and that he did not authorize Stonecipher to make any personal use of the same. Stonecipher, on the other hand, testified that when plaintiff in error delivered the notes to him he authorized him to use them as collateral security in case he desired to do so, and that the notes were turned over to the Bridgeport State Bank in accordance with the authority thus given. Three of the five notes used by Stonecipher as collateral security were overdue. The evidence of the cashier of the Bridgeport State Bank that the bank had no notice of any claim on the part of plaintiff in error to these notes, or that the title of Stonecipher was in any way defective, at the time it accepted them as collateral security, is uncontradicted. Upon the question of the authority of Stonecipher to use the notes as collateral security we think the testimony offered by plaintiff in error is the more worthy of credence, and the only question to be determined, therefore, is whether the fact that three of the notes turned over to the Bridgeport State Bank by Stonecipher were overdue, subjects the bank to all the equities existing between plaintiff in error and Stonecipher at the time they were accepted as collateral security by the bank. The case of *Young Men's Christian Association Gymnasium Co.* v. *Rockford Nat. Bank,* 179 Ill. 599, is decisive of this question. In that case Parmele held as collateral six notes, each indorsed in blank by the payee. These notes Parmele delivered to the Rockford

National Bank when they were past due, as security for a loan procured by him. The bank had no actual notice of the capacity in which Parmele held them, and received them in the course of business without inquiry. We there held that as the bank received the notes without notice that they were held merely as collateral, it was protected against the latent equities of third parties although the notes were overdue when received by it, and also that the fact that negotiable notes indorsed in blank by the payee were overdue does not charge one advancing money thereon to the holder with constructive notice of the fact that they were held merely as collateral. In this case plaintiff in error testified that at Stonecipher's request he indorsed the notes in order to put the title in Stonecipher that he might show anyone coming in to make payments thereon that he had title to them. The plaintiff in error therefore deliberately vested Stonecipher with all the indicia of ownership. As we held in *Young Men's Christian Association Gymnasium Co.* v. *Rockford Nat. Bank, supra,* it is well settled that such instruments indorsed in blank pass by delivery, the indorsement being treated as made to each subsequent transferee; also that the negotiability of commercial paper does not cease with its maturity but it can still be negotiated by indorsement. The uncontradicted testimony in this case is that the Bridgeport State Bank had no notice whatever of any defect in the title to these notes, and as Stonecipher had been invested with the legal title by plaintiff in error, the mere fact that the notes were past due did not constitute constructive notice to the bank that Stonecipher held them for a special purpose or that there was any defect in the title.

Plaintiff in error relies upon *Hide and Leather Bank* v. *Alexander,* 184 Ill. 416, and *Merchants' Loan Co.* v. *Welter,* 205 id. 647, as supporting his contention that as these notes were fraudulently put in circulation, the burden was upon the bank to prove that it took the paper in good faith

for value before maturity and in the usual course of business. In each of those cases the agent who fraudulently put the note involved in circulation was not vested with the legal title, and those cases distinguish *Young Men's Christian Association Gymnasium Co.* v. *Rockford Nat. Bank, supra,* upon that ground. As Stonecipher was vested with the legal title to the notes by plaintiff in error this case does not fall within the reasoning of the cases relied upon by plaintiff in error.

The plaintiff in error further invokes section 59 of the Negotiable Instrument act of 1907, (Hurd's Stat. 1913, p. 1682,) which provides that every holder is deemed *prima facie* to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course; and section 52 of that act, which defines a holder in due course to be one who has taken the instrument under the following conditions: (1) That the instrument is complete and regular upon its face; (2) that he became the holder of it before it was overdue and without notice that it had been dishonored, if such was the fact; (3) that he took it in good faith and for value; and (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. He contends that under these sections of the statute, the title of Stonecipher having been shown to have been defective, the burden was upon the bank to show that it acquired title before the notes were overdue. We do not agree with this construction of these two sections. Such a construction of said section 59 would render it meaningless. It is apparent when the section is read in connection with all the other sections in that article, that it means to place the burden upon the holder to prove that he, or some person under whom he claims, comes within the provision of the

fourth clause of the statutory definition of a holder in due course,—that is, that the burden is then upon him to show that at the time the instrument was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. The bank assumed that burden in this case and proved that it had no such notice, and therefore complied with these provisions of the Negotiable Instrument act.

The decree was proper, and the judgment of the Appellate Court is affirmed.        *Judgment affirmed.*