(No. 17618.—Reversed and remanded.)
H. A. FONCANNON, Defendant in Error, vs. J. A. LEWIS
et al. Plaintiffs in Error.

*Opinion filed October 22, 1927—Rehearing denied Dec. 13, 1927.*

1. BILLS AND NOTES—*when evidence that notes were procured by fraud should not be excluded.* In a suit on promissory notes, evidence tending to show that the title of the payee, from whom the plaintiff purchased the notes, was defective within the meaning of section 55 of the Negotiable Instruments act because the notes were procured by fraudulent representation, should not be excluded, where it is a question of fact whether the plaintiff, under the evidence, is a holder in due course.

2. SAME—*when question whether the plaintiff is holder in due course is for the jury.* Evidence that the plaintiff is a holder in due course may be so clear and indubitable as to justify the trial court in directing a verdict in his favor even though it be established that the instrument was induced by fraud on the part of the payee, but, notwithstanding direct and positive testimony to the effect that the plaintiff is a holder in due course, if fair and reasonable inferences tending to prove bad faith may be drawn from the facts and circumstances surrounding the negotiation and purchase of the instrument, the question whether the plaintiff is a holder in due course becomes one of fact for the jury and the court should not direct a verdict.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Franklin county; the Hon. J. C. EAGLETON, Judge, presiding.

MOSES PULVERMAN, and H. F. KNOX, (T. B. CANTRELL, of counsel,) for plaintiffs in error.

SHAW & HUFFMAN, and H. M. ROBBINS, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

On January 4, 1923, H. A. Foncannon recovered a judgment by confession for $1765 and costs against J. A. Lewis and H. H. Lewis in the circuit court of Franklin

county. The suit was based upon three promissory notes executed by the defendants, dated October 14, 1922, each for $518.51, payable to the order of the Standard Auto Insurance Association, and due, respectively, in six, nine and twelve months after their date, with interest at seven per cent per annum until paid. By endorsement the payee had transferred the notes to the plaintiff without recourse. After the rendition of the judgment, the defendants, upon their motion supported by affidavit, were given leave to plead to the merits of the action. The general issue and six special pleas were filed. A jury trial resulted in a verdict for the defendants. The plaintiff made a motion for a new trial, which was granted. Subsequently the parties stipulated that each might introduce on the trial, upon the plea of the general issue and the *similiter* thereto, all evidence that might be admissible upon any special pleas properly pleaded. On the second trial the court instructed the jury to return a verdict assessing the plaintiff's damages at $1976.04. The defendants' motion for a new trial was denied and judgment was rendered upon the verdict. The defendants prosecuted an appeal to the Appellate Court for the Fourth District, and that court affirmed the judgment of the circuit court. Upon application by the defendants this court awarded a writ of *certiorari,* and the record is here for a further review.

Upon the second trial, Foncannon, the defendant in error, testified that he was engaged in the real estate and loan business at Bicknell, Indiana; that he was acquainted with two of the officers of the Standard Auto Insurance Association but was unacquainted with J. A. Lewis and H. H. Lewis, the plaintiffs in error; that he bought the three notes from the association on October 24, 1922, and paid $1300 therefor; that he was not connected with and did not own any stock in the association and that he had no knowledge or information of any defense to the notes. The notes were introduced in evidence, and upon the first

and second the following endorsement appeared: "The Standard Auto Ins. Ass'n, by R. C. Phillippe." Across this endorsement were stamped the words, "This clause void." Further below, and also upon the back of the note due in twelve months, appeared the endorsement: "For value received we hereby transfer and assign the within note to H. A. Foncannon without recourse.—The Standard Auto Ins. Ass'n, by R. C. Phillippe, Treas." The defendant in error admitted on cross-examination that he had testified on the former trial that he bought the notes on January 2, 1923, and while he had testified that he gave a check for the purchase price of the notes and kept a check-book, yet he was unable to produce either the canceled check or the stub of the check. He testified that the reason for the liberal discount allowed him was that the association needed money; that prior to his purchase of the notes they had been held by a bank as collateral security, and that the qualified endorsement was on each of the notes when he acquired them; that he had been informed that one of the makers of the notes was about to sell a farm and that it would be advisable to reduce the notes to judgment, and that he did so without making a demand upon the plaintiffs in error for payment. He admitted that he knew the notes arose out of some transaction with reference to the association's business at West Frankfort, Franklin county, Illinois, but that he made no investigation to determine whether at the time the notes were given the association was authorized to do business in this State.

The plaintiffs in error offered to show upon the trial that in 1921 S. C. Gilmore was the association's agent at West Frankfort to write automobile insurance in southern Illinois; that Gilmore conducted his business under the name of the Motor Car Abstract and Security Company; that in the same year he invited the plaintiff in error J. A. Lewis to join him; that Lewis did so, and the partnership conducted its business under the name and style which Gil-

more had adopted originally; that in September, 1922, the association's auditor discovered that Gilmore was indebted to the association in the sum of $1555.53 for premiums which he had not remitted; that about one month later J. F. Organ, the association's general superintendent of agencies, came to West Frankfort and represented to the plaintiffs in error that he had complete authority to adjust the shortage and to appoint a new agent; that if Lewis would pay the amount of Gilmore's defalcation, he, Lewis, would be appointed the association's exclusive agent during the ensuing year for all of Illinois south of the Baltimore and Ohio railroad, and that from the profits of the agency during that period Lewis could not only reimburse himself for Gilmore's shortage but enjoy a comfortable living in addition; that Lewis did not possess the sum of money required, and Organ thereupon agreed to take his three notes, each for one-third of the sum, due in six, nine and twelve months, with interest at seven per cent, provided his father would also execute the notes; that, relying on Organ's representations, plaintiffs in error accepted his proposition and executed the notes, and Organ promised to forward the requisite appointment, documents and policies; that the appointment was not forthcoming, and on or about November 1, 1922, Lewis went to the association's main office, at Vincennes, Indiana, where its officers promised, upon the execution of a fidelity bond in the sum of $5000, that the appointment would be made; that the bond was executed and delivered to the association, but shortly thereafter, by a letter dated November 14, 1922, and addressed to Lewis, the association stated that it did not care to renew its license to do business in Illinois and that it would not be able to accept any business from him; that at no time after October 14, 1922, did the association appoint Lewis its agent, and that it never surrendered to the plaintiffs in error the notes which it had obtained from them. The plaintiffs in error further offered to show that on Feb-

ruary 13, 1922, the association had written the superintendent of insurance of Illinois that it had withdrawn from the State and would not ask for a renewal of its license to do business during the ensuing year; that when the plaintiff in error H. H. Lewis signed the notes he was informed by Organ that they were made for the purpose of permitting his son to continue as agent for the association and not to make up Gilmore's defalcation, and that upon Organ's departure from West Frankfort on the day he obtained the notes he told Ed Mercer that he had secured the payment of Gilmore's shortage but that the association did not intend to appoint J. A. Lewis as its agent. Upon objection by the defendant in error the evidence offered by the plaintiffs in error was excluded from the jury.

The plaintiffs in error contend (1) that they had the right to show that the title of the payee, the Standard Auto Insurance Association, to the notes was defective because (*a*) they were obtained by fraud, (*b*) there was a total failure of consideration for the notes, and (*c*) the association was not licensed to do business in Illinois at the time the notes were given; (2) that upon showing any of these facts the burden of proof rested upon the defendant in error to prove that he was a holder of the notes in due course; and (3) that the question whether the defendant in error had established his claim that he was such a holder raised an issue of fact to be determined by the jury.

Section 55 of the Negotiable Instruments act (Cahill's Stat. 1925, p. 1670,) provides that the title of a person who negotiates an instrument is defective within the meaning of the act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith or under such circumstances as amount to a fraud. The first question to be determined is whether the evidence offered by the plaintiffs in error, if admitted, would have tended to prove that

the title of the Standard Auto Insurance Association to the notes in question was defective. Organ, the association's superintendent of agencies, obtained the notes from the plaintiffs in error on October 14, 1922, upon the representation that J. A. Lewis would be appointed the association's agent for the ensuing year in all the territory of Illinois south of the Baltimore and Ohio railroad. At the· time this representation was made the association had ceased for eight months to do business in Illinois and it had no authority to prosecute its business in this State. As Organ departed from West Frankfort on the day he obtained the notes, he told Ed Mercer that he had secured the payment of Gilmore's shortage but that the association did not intend to appoint J. A. Lewis as its agent. After a lapse of ten days without the appointment having been made, Lewis made inquiry at the association's main office, in Vincennes, Indiana, and was assured by its officers that the appointment would be made but that he must first submit a fidelity bond. The bond was furnished as requested, but instead of the promised appointment Lewis received a letter from the association dated November 14, 1922, stating that it did not care to renew its license to do business in Illinois and that it could not accept any business from him. The decision to discontinue business in this State was not new, for, nine months before, the association had written the superintendent of insurance that it had withdrawn from this jurisdiction and that it would not seek a renewal of its license to do business in Illinois. Without authority to appoint agents in this State it obtained the notes upon the false and fraudulent representation that it would appoint Lewis its agent for a definite period in a specified territory. Not only was the appointment never made, but the association neither could nor ever intended to make it. Yet the notes were not returned to the plaintiffs in error. The evidence offered by the plaintiffs in error tended to show that the title of the payee, the Standard Auto Insurance As-

sociation, to the notes was defective within the meaning of section 55 of the Negotiable Instruments act, and the evidence should not have been excluded.

The defendant in error, however, insists that he is the holder of the notes in due course and that the defenses which the plaintiffs in error might interpose to an action on the notes by the payee are not available to them in this suit. . A holder in due course is a holder who has taken the instrument under the following conditions: (1) That the instrument is complete and regular on its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. (Cahill's Stat. 1925, chap. 98, sec. 52, p. 1670.) Section 56 of the same act provides that to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating it, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith. By section 59 of the act every holder is deemed *prima facie* to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course.

The further inquiry is whether the defendant in error is a holder of the notes in due course as defined in section 52 of the Negotiable Instruments act. On the first trial he testified that he bought the notes on January 2, 1923, two days before he recovered judgment upon them by confession. According to his testimony on the second trial he bought the notes on October 24, 1922, or ten days after they were executed. He admits that he knew the notes

arose out of some transaction with reference to the agency of the association at West Frankfort but that he made no inquiry of the plaintiffs in error concerning them. He claims that he paid $1300 for the notes by check, and although he was engaged in business accustomed to issuing checks and keeping a record of them, yet he was unable to produce either the check or the stub in the book from which the check was issued. The production of the check, or even of the stub, would have shown, or in any event tended to show, not only the date of the purchase of the notes but also the fact of the purchase itself. If he bought the notes on January 2, 1923, as he first testified, he apparently did so immediately to recover a judgment by confession in another State against the makers of the notes, who were strangers to him and with whom he had not communicated. Such a proceeding is somewhat unusual. The defendant in error was the only witness in his behalf, and inferences may reasonably be drawn from his testimony that he did not take the notes in good faith or for value, and hence that he was not a holder of them in due course.

The evidence that the transferee of a negotiable instrument is a holder in due course may be so indubitable as to make it the duty of the trial court to direct a verdict in his favor even though it be established that the instrument was induced by fraud on the part of the payee. Where, however, there is direct and positive testimony to the effect that the plaintiff is a holder in due course, yet if fair and reasonable inferences tending to prove bad faith may be reasonably drawn from the facts and circumstances surrounding the negotiation and purchase of the instrument, the question whether the plaintiff is a holder in due course becomes one of fact for the determination of the jury. (*Second Nat. Bank* v. *Scanlon,* 196 Iowa, 1305; *Commercial Savings Bank* v. *Colthurst,* 195 id. 1032; *Phillips* v. *Eldridge,* 221 Mass. 103.) Upon the evidence, and the inferences which may be properly drawn therefrom, the case

should have been submitted to the jury, and the trial court erred in directing a verdict for the defendant in error.

The judgments of the Appellate and circuit courts are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*