(No. 18545.—

EVERETT OWENS, Defendant in Error, *vs.* J. S. NAGEL, Plaintiff in Error.

*Opinion filed February 20, 1929.*

FREDERICK KULL, (CHARLES E. HECKLER, of counsel,) for plaintiff in error.

GOLDMAN, ALLSHOUSE & HEALY, (ROBERT G. DREFFEIN, of counsel,) for defendant in error.

Per CURIAM: Defendant in error, Everett Owens, began suit on a promissory note in the municipal court of Chicago against plaintiff in error, J. S. Nagel. There was a trial by jury, a directed verdict in favor of defendant in error for $1740, the judgment was affirmed by the Appellate Court, and the case is before this court on a writ of *certiorari*.

98

Defendant in error in his statement of claim alleged that a note for $1500 was executed by plaintiff in error on March 23, 1923, payable to the order of John F. Erisman, trustee, due one year after date; that the note, for a valuable consideration paid before maturity, was endorsed to defendant in error by Erisman, trustee, and defendant in error is the holder thereof and it is unpaid. The amended affidavit of merits filed by plaintiff in error alleged that on March 23, 1923, he signed a note for $1500 and handed it to Erisman, as trustee, upon condition that Erisman would not transfer it but would hold it as trustee for plaintiff in error and the Blue Flag-Silverton Gold Mines Company until maturity and until the company had paid to plaintiff in error its indebtedness to him, which was largely in excess of $1500. Upon information and belief it was denied that the note was endorsed to defendant in error by Erisman before maturity for a valuable consideration paid by defendant in error or that he was the holder at the time of the commencement of the suit. It was alleged that the note was given in Cook county as part of the consideration for certain class "D" securities as defined in the Illinois Securities law, consisting of 3500 shares of stock of the gold mines company, which were sold to plaintiff in error by Erisman, its president and general manager, in violation of the Securities law, there having been filed with the Secretary of State no documents required by said law for the sale of such securities in Illinois; that Erisman had prior thereto made many other unlawful sales of said stock in Illinois, and that the consideration for the note was illegal. It was alleged that Erisman knowingly, falsely and fraudulently represented to plaintiff in error that the gold mines company was amply financed and fully able to begin active mining operations; that he relied on these representations, was deceived thereby and was induced to sign the note; that defendant in error is not a holder in due course; that he did not take the note complete and regular upon its face,

and that at the time of the commencement of the suit he had it merely for collection for the gold mines company. Upon information and belief it was alleged that the note was transferred for the purpose of barring plaintiff in error from the defenses of illegality and fraud against Erisman, as trustee, and the gold mines company, the real owners, and to deprive plaintiff in error of the right of set-off for money due him from Erisman and from the company several times in excess of the amount of the note.

The two parties were the only witnesses who testified. Plaintiff in error testified that he signed the note, gave it to Erisman and received the stock. Defendant in error testified that he is a lawyer living in Denver, Colorado; that in September, 1923, he bought the note from Erisman, gave Erisman his check for $1190 and canceled a note for $200 due him from Erisman; that the check was paid by the bank; that at the time he purchased the note he had no notice that plaintiff in error had any claim for set-off against it; that on July 9, 1924, as attorney for L. Larson, he filed in the county court at Denver a complaint sworn to by him in the case of Larson against plaintiff in error upon this note, in which he swore that Erisman, trustee, sold and delivered the note to Larson for value long before it was due, and that Larson was then the owner and holder in due course. He identified a photostatic copy of the complaint filed in that case, signed by him. He testified that the statement made in the affidavit attached to the complaint was true; that the note was bought and transferred to him and was then transferred to Larson for the purposes of that suit; that the Denver suit was dismissed and the note was returned to him; that he had been informed that a suit had already been started in Chicago and it would probably take a couple of years before it could be tried, and he was led to believe he could get quicker action by bringing a suit in Denver and attaching the stock belonging to plaintiff in error; that Larson was his stenographer. A photostatic copy

of the complaint filed in the Denver court was offered in evidence by plaintiff in error, to which defendant in error objected, and the ruling thereon was reserved by the court.

Plaintiff in error testified that he had known Erisman about ten years; that on March 23, 1923, Erisman was the president, general manager and trustee of the gold mines company and was selling its stock; that on that day Erisman called at the office of plaintiff in error in Chicago and a conversation took place between them which he attempted to relate. He offered to show that at the time the note was executed Erisman said the company was amply financed. Erisman asked plaintiff in error to buy more stock, and said he would sell 3500 shares of treasury stock for $500 cash and a note for $1500 due in one year; that plaintiff in error told him that the corporation owed him over $2500 and he would be unwilling to pay the $1500 note until the corporation paid its indebtedness to him; that Erisman said, "I will hold this note until maturity and not transfer it until the company has paid your note, and we will have the note made out to myself, trustee;" that it was upon these conditions that the note was given; that it was not absolutely delivered and that the gold mines company was still indebted to plaintiff in error. This evidence was excluded on the theory that it did not affect defendant in error's rights, because he was not present at the time that conversation took place. Plaintiff in error also offered to show that the gold mines company had not filed documents with the Secretary of State, as the law required where it is sought to sell class "D" securities. This evidence was also excluded.

As grounds for reversal it is urged that defendant in error neither alleged in his statement of claim nor proved on the trial that he was a holder in due course; that any presumption to that effect was overcome by his own evidence; that he did not testify that he had no notice of any infirmity in the note or defect in the title of Erisman, or that he took the note in good faith or for value paid to

Erisman, but, on the contrary, the note was payable to Erisman as trustee and was so endorsed, which was notice to defendant in error that Erisman held it in a fiduciary capacity; that this was a warning to defendant in error of infirmities which inquiry would have disclosed; that he showed bad faith by giving a check to Erisman as an individual and by the cancellation of a $200 personal debt he had against Erisman; that defendant in error was not a holder in due course and the note was subject to the defenses sought to be made against it, consisting of illegal consideration, false representations, and negotiations in breach of trust amounting to fraud; that it was error for the court to direct a verdict on the assumption that defendant in error was a holder in due course; that even if there was evidence that he took the note in good faith and without notice of any infirmity or defect, the case should have been submitted to the jury.

Section 52 of the Negotiable Instrument act defines a holder in due course as one who takes the instrument under the following circumstances: (1) That the instrument is complete and regular on its face; (2) that he became the holder before it was overdue and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. The evidence of defendant in error was that the note was transferred for value before it was due and that he had no notice of any set-off in favor of plaintiff in error. Under section 59 of the statute, in the first instance, defendant in error was deemed *prima facie* to be a holder in due course. This presumption continued until evidence was produced by plaintiff in error to show the contrary. If no such evidence was produced the presumption continued that defendant in error was a holder in due course. If evidence was introduced tending to show that the title of Eris-

man was defective, then the burden was on defendant in error to prove that he, or some person under whom he claimed, acquired title in due course. (*Justice* v. *Stonecipher*, 267 Ill. 448.) Section 55 provides that a title is defective where it is negotiated in bad faith or under such circumstances as amount to a fraud. Section 56 provides that to constitute notice of an infirmity or defect in the title of a person negotiating the note the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.

Plaintiff in error insists that because the note was payable to Erisman, trustee, the word "trustee" was a warning to all purchasers that Erisman held it in a fiduciary capacity, and that all purchasers were put upon inquiry and were charged with such notice as inquiry would have revealed. A negotiable instrument made in favor of A B, trustee, is none the less negotiable, and a purchaser thereof from the trustee is not charged with or subject to equities existing in favor of the makers when the trustee, in disposing of the note, did not act in contravention of his trust. The great weight of authority, as well as the better reasoning, favors the rule that the word "trustee," when appended to the name of the payee of a bill or note, is sufficient to charge a purchaser with notice of restrictions and limitations imposed on the trustee's power to dispose of the instrument. The term is a warning and a declaration to everyone who reads it that the person so named is not the owner of the property to which it related, that he holds it for the use and benefit of another, and that he has no right or power to sell or dispose of it except in accordance with the terms of the trust. A trustee has no authority to transfer trust funds in payment of his private debt, and an attempt to do so constitutes an illegal diversion of the trust property. The fact that the word "trustee" is on the face of the note does not put the purchaser to any inquiry beyond ascertain-

ing whether the trustee has power to sell or otherwise dispose of it. If on inquiry it is found that there is no restriction on the trustee's power of disposition or there is nothing in the nature of the transaction to indicate any abuse of his trust, then the title of a purchaser in good faith for value and before maturity will be protected. *Chicago Title and Trust Co.* v. *Brugger,* 196 Ill. 96; *Henshaw* v. *State Bank,* 239 id. 515; 8 Corpus Juris, 515; *Shaw* v. *Spencer,* 100 Mass. 382; *Geyser-Marion Gold Mining Co.* v. *Stark,* 106 Fed. 558; 3 Ruling Case Law, sec. 288.

Applying these rules and statutory provisions to the instant case, the question arises whether the defendant in error was a holder of the note in due course, as defined in section 52 of the Negotiable Instrument act, the fourth provision of which is, that at the time the note was negotiated to the one claiming to be a holder in due course he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. The note in this case was made payable to John F. Erisman, trustee. Defendant in error's evidence is that he purchased it from Erisman personally and paid him $1190 by check and canceled a small personal note which Erisman owed to him. He does not testify that at the time the note was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of Erisman negotiating it. A trustee is one to whom property is legally committed in trust; one entrusted with the property of another. This note showed on its face that infirmity in the title of Erisman. Defendant in error took it, in part at least, in payment of Erisman's own debt. He does not testify that he made any inquiry as to the character or limitation of the trust. Where a note is payable to a trustee, one who purchases from the payee in settlement of an individual debt of the payee is by the terms of the note put on inquiry as to the character and limitation of the trust, and if he accepts the note without such inquiry he does so at his peril.

Section 55 of the Negotiable Instrument act declares that the title of a person who negotiates an instrument is defective, within the meaning of the act, when he obtained the instrument, or any signature thereto, by fraud, duress, force or fear or other unlawful means, or for an illegal consideration, "or when he negotiates it in breach of faith or under circumstances amounting to a fraud." Plaintiff in error sought to show a defect in the title of Erisman by testimony as to the limitations of the trust under which Erisman held the note and of which trust the note gave notice. This testimony should have been admitted. The testimony offered, if true, shows that these notes were not to be negotiated but were to be held until certain debts of the mining company were paid to plaintiff in error. The effect of this evidence was to show that Erisman was trustee not only for the payee but for the maker of the note, which was to be paid only on the conditions enumerated in the trust. Under these circumstances, to negotiate the note and put it in circulation as a valid promissory note was to negotiate it in breach of faith and under circumstances amounting to fraud within section 55, which declares the title of one who so negotiates an instrument to be defective. *Foncannon* v. *Lewis*, 327 Ill. 455; *Bell* v. *McDonald*, 308 id. 329.

Counsel for defendant in error cite the case of *Justice* v. *Stonecipher, supra.* This case, however, is not out of harmony with the cases here cited. Defendant in error made no inquiry regarding Erisman's title or right to disposition of the note nor as to the limitations of the trust plainly indicated on the note.

The judgments of the Appellate and municipal courts are reversed and the cause is remanded to the municipal court for a new trial.           *Reversed and remanded.*