414

Edward T. O'Connor, Trustee of Estate of Last Will and Testament of Thomas P. Hayden, Deceased, Appellee, v. The Central National Bank and Trust Company of Peoria, Appellant.

Gen. No. 9,507.

Opinion filed August 8, 1940.

TODD, ARBER, PENDARVIS & ANDERSON, JOHN M.
ELLIOTT and H. D. MORGAN, all of Peoria, for appellant.

JOSEPH F. BARTLEY, CLARENCE W. HEYL and HERBIG
YOUNGE, all of Peoria, for appellee; BARTLEY & YOUNGE,
of counsel.

MR. PRESIDING JUSTICE WOLFE delivered the opinion
of the court.

Edward T. O'Connor as trustee of the estate, under
the terms of the last will and testament of Thomas P.
Hayden, deceased, started a suit in the circuit court of
Peoria county against the defendant, the Central Na-
tional Bank & Trust Company of Peoria, to recover the
proceeds of the sale of U. S. Treasury Bonds aggre-
gating $22,800 face value, originally owned by the
plaintiff, and alleged to have been converted to its own
use by the defendant. It is alleged that Edward T.
O'Connor took these bonds to Rogers & Company, a
brokerage firm in the city of Peoria, and delivered the
same to them for the express and only purpose of hav-

ing the bonds, which were registered, exchanged for coupon bonds; that Rogers & Company wrongfully, and without any notice to the plaintiff, took the bonds to the defendant bank and negotiated them to the defendant; that Rogers & Company did a regular brokerage business in the city of Peoria, and was in the business of buying and selling, as brokers, or agents, and owners of securities; that this fact was well known to the defendant bank, its officers and agents; that the defendant bank, through whom Rogers & Company negotiated the bonds, had actual knowledge of the infirmity, or defect in the title of Rogers & Company, or at the time of the delivery of such bonds to the defendant, had knowledge of such facts and circumstances, that its action in taking the bonds and giving credit for the same to the account of Rogers & Company, amounted to bad faith. The defendant denies that they had any knowledge that the bonds did not really belong to Rogers & Company, or that they had any knowledge of any facts and circumstances of the defect in the title to the bonds in question, which amounted to bad faith on their part.

The answer of the defendant admits that O'Connor was acting as trustee of the estate, under the terms of the last will and testament of Thomas P. Hayden, deceased; that Rogers & Company are brokers in the city of Peoria; that they received the bonds from Rogers & Company as alleged in the complaint; that the bonds were negotiated through the bank; that the bank received the proceeds from the sale of the bonds, and credited the same to the account of Rogers & Company. As a further defense to the charge in the complaint, the bank alleges that the plaintiff indorsed all of the bonds in question in blank, and delivered them so indorsed, to Rogers & Company and vested Rogers & Company with the power and authority to transfer, sell and pledge, or otherwise dispose of said bonds; that Rogers & Company delivered and negotiated said bonds to the defendant and took them and the proceeds

thereof, for value, in good faith, and without any knowledge, or notice that the plaintiff had any title to said bonds, or that there was any defect in the title of Rogers & Company to said bonds; that plaintiff is estopped from recovering said bonds, or the proceeds thereof, from the defendant. The plaintiff filed a replication denying all affirmative allegations in the defendant's answer. The pleadings are quite voluminous, but there is no question raised in regard to their sufficiency, so it is deemed unnecessary to state in detail what the pleadings are.

The case was tried before a jury who rendered a verdict in favor of the plaintiff and assessed damages in the sum of $28,067.17. In addition thereto, the court found that the plaintiff was entitled to $350, as expense and counsel fees, on the hearing on the suggestion of damages, for defendant's refusal to admit certain facts. The court then entered judgment for the plaintiff in the sum of $28,417.17. It is from this judgment that the appeal has been perfected to this court.

It is insisted by the appellee that when the plaintiff proved that the title of Rogers & Company to the bonds at the time it negotiated said bonds was defective, the burden was then cast upon the defendant, who claimed to be the holder of the bonds in due course, to prove that it or some person under whom it claimed, acquired title to plaintiff's bonds as a holder in due course; that this constituted a defect in the title to said bonds as said term is defined by the statute, and in this case it amounted to no title whatsoever. Section 75, ch. 98, of Smith-Hurd's Annotated Statute [Jones Ill. Stats. Ann. 89.075] provides as follows: "The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration or when he negotiates it in a breach of faith, or under such circumstances as amount to fraud."

From a review of the evidence, it is clearly established that Edward T. O'Connor took the bonds in question to Rogers & Company, for the sole purpose of having the bonds, which were registered, exchanged for coupon bonds so that it would be more convenient for him in distributing the bonds among the legatees under the will of Thomas P. Hayden, deceased; that he did not take them for the purpose of selling them to Rogers & Company and that Rogers & Company did not have good title to any of these bonds. After the plaintiff has established that the title to the bonds in Rogers & Company was defective, the question then arises, must the plaintiff show that the defendant was not a holder of the bonds in due course, or was the burden of proof cast upon the defendant to show it was a holder in due course?

In the case of *Hide & Leather Nat. Bank v. Alexander,* 184 Ill. 416, our Supreme Court was discussing who had the burden of proof to show that the bank had good title to a promissory note. On page 419, of the opinion we find the following: "The third proposition assumed as a fact that the defendant was an innocent purchaser of the note, and was bad for that reason. The note was transferred by Schintz fraudulently, and the rule is, that when a note has been put into circulation fraudulently, the presumption in favor of the holder's title is overcome. Schintz committed a fraud by disposing of the note to which he had no title, and it rested upon the bank to show that it took it in good faith for value before maturity and in the usual course of business. (*Wright v. Brosseau,* 73 Ill. 381; *Charles v. Remick,* 156 id. 327; *Hodson v. Eugene Glass Co.* 156 id. 397; 4 Am. & Eng. Ency. of Law,— 2d ed.—321.) Whether the defendant succeeded in making such proof was to be determined as a question of fact, and should have been embraced within the hypothesis."

This court in the case of *Peru State Bank v. Wag-*

*gett,* 230 Ill. App. 522, use this language: "The trial court found that the note was based upon an illegal consideration. Therefore it was the duty of the appellant to prove that it was a bona fide holder in due course. The rule that a holder of a negotiable instrument is deemed prima facie to be a holder in due course has no application when it is shown that the title of any person who has negotiated the instrument is defective. When a defect in the title of the payee is shown, the burden is then on the holder to prove that he became the holder before maturity in good faith, for value, and that he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. (Cahill's Rev. St. 1921, ch. 98, ¶ 79; *Justice v. Stonecipher,* 267 Ill. 448.)" (*Woodlawn Trust & Savings Bank v. Donaho,* 239 Ill. App. 158.)

In the case of *Owens v. Nagel,* 334 Ill. 96, the question of whether the holder of a promissory note·was a holder in due course was involved and the Supreme Court on page 101 have this to say: "Section 52 of the Negotiable Instrument act defines a holder in due course as one who takes the instrument under the following circumstances: (1) That the instrument is complete and regular on its face; (2) that he became the holder before it was overdue and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. The evidence of defendant in error was that the note was transferred for value before it was due and that he had no notice of any set-off in favor of plaintiff in error. Under section 59 of the statute, in the first instance, defendant in error was deemed *prima facie* to be holder in due course. This presumption continued until evidence was produced by plaintiff in error to show the contrary. If no such evidence was produced the presumption con-

tinued that defendant in error was a holder in due course. If evidence was introduced tending to show that the title of Erisman was defective, then the burden was on defendant in error to prove that he, or some person under whom he claimed, acquired title in due course. (*Justice v. Stonecipher,* 267 Ill. 448.) Section 55 provides that a title is defective where it is negotiated in bad faith or under such circumstances as amount to a fraud. Section 56 provides that to constitute notice of an infirmity or defect in the title of a person negotiating the note the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.''

It is apparent from the language used, both by our Supreme and Appellate Courts, that the law is that after the plaintiff had established the fact that the title in Rogers & Company to the bonds in question was defective, that the burden was then cast upon the defendant in this case to prove that it was a holder of the same in due course.

The plaintiff introduced evidence to show that on March 25, 1938, a $10,000 bond was taken to the defendant bank, by Mr. O'Connor and Ralph Buchele of Rogers & Company, to have the indorsement of O'Connor, the trustee, acknowledged before a national bank officer; that Mr. O'Connor indorsed the bond, Mr. Kleinschmidt took his acknowledgment, and the bond was returned to Mr. Buchele; that Mr. Buchele told Kleinschmidt that O'Connor had not been paid for it, and that he, Buchele, did not know whether the bond was to be exchanged, or whether it was to be paid for by check. This was the day that the Rogers & Company's checking account at the defendant bank was overdrawn more than $9,600, and on the same day the bank credited the checking account of Rogers & Company for $10,000, although it is admitted that the bond was then worth in excess of $11,500.

Over the objection of the defendant, the plaintiff introduced evidence showing the transactions of Rogers & Company with the defendant bank prior to the time the bonds were delivered to the defendant. This evidence discloses that Albert G. Kleinschmidt, the assistant cashier of the bank, transacted all or a large part of the business between the bank and Rogers & Company under the general supervision of F. M. Blossom, the vice president of the bank; that on the day the $10,000 bond was presented to the bank by Rogers & Company, the Rogers' account was overdrawn $9,604; that Rogers & Company was indebted to the defendant bank in a large sum; that the bank had never taken a financial statement from Rogers & Company, but had some collateral security for the indebtedness; that collateral was worth a great deal less than the indebtedness to the bank; that Rogers & Company had signed a number of blank notes and left them at the bank and when they would have an overdraft, Kleinschmidt, the assistant cashier, would get one of these notes, fill in an amount in excess of the overdraft and hold it until Rogers & Company brought in money, or securities to cover the overdraft; that this procedure had been followed for a considerable length of time. Other testimony was given in regard to how the account of Rogers & Company was kept at the bank, especially as to the "Odd Lot Account," and the unsatisfactory condition of the accounts of Rogers & Company.

The evidence further shows that Kleinschmidt had frequent conversations with members of the firm of Rogers & Company, prior to March 25, 1938, in regard to the account of Rogers & Company with the bank. The bank, through Kleinschmidt, was demanding payment on checks which the bank was holding for the payment of securities taken from the "Odd Lot" or collateral account. On one occasion, Kleinschmidt, to keep the account of Rogers & Company from being overdrawn, used the credit of another customer of the bank, namely, George Mason Parker, for the benefit

of Rogers & Company. This amounted to $5,447.82. The evidence further shows that on the evening of March 30, 1938, there was a conference between Mr. F. M. Blossom, F. F. Blossom and Mr. Kleinschmidt, relative to the account of Rogers & Company with the defendant bank, and especially in regard to a $15,-000 draft of Rogers & Company which had not been paid, and a $10,000 draft which had been outstanding from the middle of December 1937. They had a discussion as to the indebtedness of Rogers & Company at the bank and the security that they had as collateral for such indebtedness, and a general discussion about the account of Rogers & Company; that Mr. Kleinschmidt informed Mr. F. F. Blossom, the president of the defendant bank, that Rogers had some government bonds coming from the plaintiff, O'Connor. There was another meeting that night in the office of the bank's attorney, Hiram Todd, in which Mr. F. F. Blossom, John Blossom, Albert Kleinschmidt and N. L. Rogers were present. Kleinschmidt testified that Mr. F. F. Blossom stated to Mr. N. L. Rogers, "Kleinschmidt tells me you are getting some O'Connor bonds, how soon can we have them?" That Kleinschmidt then read off a list of checks totalling a considerable amount and Blossom asked Rogers when he could pay them; that in answer to a statement by Mr. Blossom, "Mr. Kleinschmidt tells me that you are going to get some bonds from O'Connor, some Government Bonds," Rogers replied, "That is true"; that Blossom then asked Rogers, "How many," and he answered, "He thought about eighteen or nineteen thousand dollars worth"; that Blossom then asked Rogers in substance, "Did he, Rogers, own those bonds?" To which Rogers made some evasive reply, and with a shrug of his shoulders and movement of his hands, said, "That he would bring the bonds in, the next morning"; that the bonds had a face value of $12,800 and were delivered to Kleinschmidt for the bank the next day; that Klein-

schmidt took the bonds to F. F. Blossom who instructed Kleinschmidt to retain possession of them, and make out a pledge covering the bonds.

Mr. N. L. Rogers corroborated the testimony of Mr. Kleinschmidt in regard to what was said and done at the conference between the Blossoms, Kleinschmidt and Rogers. F. F. Blossom, in his testimony, does not say that these conversations did not take place, but says, he has no recollection that the government bonds were mentioned. It would be impracticable to state in this opinion all the evidence of the transaction between Rogers & Company and the bank relative to their account and concerning the transaction in question. We think that this evidence was admissible to show the condition of the account between Rogers & Company, and the defendant bank, as tending to show that Rogers & Company, in negotiating the bonds to the defendant company, was not acting in good faith, and was concealing something in regard to the transaction. The evidence clearly shows that Kleinschmidt, the cashier, and the person through whom the whole transaction, relative to the bonds was consummated, had knowledge that Rogers & Company was not acting in good faith in the disposal of these bonds. It also seems clear that the president of the bank, at the conference, held on the evening of March 30th, at Mr. Todd's Office, obtained knowledge from Mr. Rogers in regard to these bonds, that would lead the ordinary prudent businessman to believe that there was something wrong with the title to the bonds which Mr. Rogers was going to deliver to the bank the next day.

The defendant offered to prove that prior to March 30th, Kleinschmidt had not informed any officer of the defendant of the irregularity of some of the accounts of Rogers & Company, or that he was having trouble with them concerning its account; that they offered to prove that Kleinschmidt had a brokerage account with Rogers & Company contrary to the rules of the de-

fendant company; that neither F. M. Blossom or F. F. Blossom had any actual knowledge prior to March 30, 1938, that Kleinschmidt had released to Rogers & Company, certain securities which had been held as collateral by the bank in the "Odd Lot Account." We do not think the court erred in refusing to let the defendant prove these facts, as it is immaterial in this case. Whether the other officers of the bank had actual knowledge of what Kleinschmidt, as another officer of the bank, was doing, is immaterial, as the general rule of law is that the principal is charged with notice of knowledge concerning a matter within the scope of his employee's agency. It is undisputed that Kleinschmidt, as assistant cashier of the defendant bank, was the agent and had authority to transact the business of the bank with Rogers & Company.

It is insisted by the defendant that notice could not be imputed to the bank by reason of the knowledge or acts of Kleinschmidt relative to the Rogers' account, because Kleinschmidt was acting adversely to the interests of the bank. We cannot agree with the appellant that the evidence shows in this case, that Kleinschmidt, in his actions with the transaction in question, was acting adversely to the interests of the defendant, or for his own benefit. The defendant bank received all the money from plaintiff's bonds and credited the account of Rogers & Company with the proceeds thereof. No cash or new value was given to Rogers & Company by the bank for the bonds. Kleinschmidt was the sole representative of the bank in carrying out this transaction. In the American Law Institute's Restatement of the Law of Agency, section 274, after stating the general rule that the knowledge of an agent who acquires property for his principal affects the interest of his principal in the subject matter to the same extent, as if the principal had acquired it with the same knowledge, the following is stated: "Where agent acts adversely. The rule stated in this section applies

although the agent is acting for an individual purpose of his own. Thus, if the agent for an undisclosed principal, authorized to purchase a negotiable instrument payable to bearer, purchases such instrument for the principal only to accommodate the seller, knowing of the fraud in the inception of the instrument, the principal is affected by the agent's knowledge. The principal may be required to surrender the instrument, not because of the fraud or wrong of the agent in the scope of his employment, but because the principal must trace his title through the act of the agent. Ordinarily, he cannot keep the proceeds of the Act without at the same time being bound by the means by which the property was acquired." To the like affect is *Sherman State Bank v. Smith*, 244 Ill. App. 171; *First Nat. Bank of Monmouth v. Dunbar*, 118 Ill. 625.

In *Queenan v. Mays*, 90 F. (2d) 525, it is stated: "It is a well settled general rule that notice to, or knowledge of, an agent while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, his principal. Certain qualifications of the general rule are equally well settled. A principal is not chargeable with or bound by notice to, or knowledge of, an agent as to matters involved in a transaction in which the agent deals with the principal or another agent of the principal as, or on account of, an adverse party. The exception applies when the agent is engaged in prosecuting some fraudulent or illegal enterprise, the success of which would be impaired or defeated by the disclosure to his principal of the notice or knowledge sought to be imputed. A qualification of the exception is recognized where the agent, although engaged in perpetrating an independent fraudulent act on his own account, is the sole representative of the principal and the principal, with knowledge of the facts, retains the fruits of the transaction. In such a case the principal is impaled on the horns of a dilemma. If

he disclaims the agent's act as unauthorized, he has no grounds to retain the fruits thereof; on the other hand, if he retains the fruits of the agent's act, after knowledge of the facts, he must in fairness be charged with the agent's knowledge. The reason for the qualification is stated in Mechem on Agency (2d Ed.) p. 1412, as follows: 'The real ground upon which the situation rests is, . . . that where the agent is the sole representative of the corporation, the corporation can not claim anything except through him and that therefore if it claims through him, after notice of the facts, it must accept his agency with its attendant notice.''

Under the facts in this case, we think that any knowledge that Kleinschmidt, the assistant cashier of the bank, had as to the defective title of Rogers & Company to these bonds, was notice to the bank of the same defects. The bank having accepted and retained the proceeds from the bonds, is charged with their agent, Kleinschmidt's knowledge of such defects.

Complaint is made by the appellant to plaintiff's given Instruction No. 11. This instruction is in regard to the notice that is imputable to the bank of any knowledge that Albert G. Kleinschmidt, the assistant cashier, had of the defects or irregularity of the title of Rogers & Company to the bonds in question. We find no merit in appellant's criticism of this instruction. The defendant's refused Instructions Nos. 6, 9, 10, 11 and 12 were based upon facts, which, at the time of the trial, the defendants alleged they could prove, but the court refused to permit them to do so, and held the offered testimony to be immaterial. We have stated in this opinion that the court properly rejected this testimony, and therefore did not err in refusing to give these instructions. Complaint is made in regard to the court's refusal to give defendant's instruction, "Marked No. 7, refused." The substance of this instruction is the same as defendant's given Instruction No. 19. Complaint is also made in regard to plaintiff's

given Instruction No. 9. We do not think this instruction is subject to the criticism as stated by appellant, as under the facts as shown by the evidence and the law of the case, it states a correct proposition of law. Defendant's refused Instruction No. 13 is fully covered by its given Instruction No. 16. On the whole, we think the jury were properly instructed.

It is seriously insisted by appellant that the attorneys for the plaintiff in their closing argument to the jury, made improper and prejudicial remarks. It is also contended that the opening statement by the attorney for the plaintiff was highly prejudicial to the defendant and both the argument and statement were of a nature that was highly prejudicial, and for this reason alone, the judgment of the lower court should be reversed and the cause remanded for a new trial. That part of the opening statement and the argument to the jury of plaintiff's counsel that is objected to, is contained in the report of proceedings and is abstracted. A consideration of this argument convinces us that it cannot be approved as being proper. However, whether this argument was in answer to statements made by opposing counsel, this court has no way of knowing, as the whole of the arguments are not incorporated in the report of proceedings, nor in the abstract. In the case of *Rowoldt for use of Flanagon v. Cook County Farmers Mut. Ins. Co.,* 305 Ill. App. 93, the Appellate Court of the First District uses this language: "The closing argument of plaintiff's counsel is severely criticized, but the argument which counsel for defendant made has been entirely omitted from the report of the proceedings of the trial." In *Metropolitan Life Ins. Co. v. Banion,* 106 F. (2d) 561, 568, the court said: "Ordinarily a judgment will not be reversed on the ground of improper argument where all arguments are not in the record so that it can be determined whether the parts drawn in question were provoked or made in response." This is the first time

that this question has been called to our attention and we would not say that we are committed to the doctrine that because the whole of the arguments to the jury is not incorporated in the report of proceedings, for this alone we would hold that it is not reversible error. This case was stubbornly contested from start to finish and a casual reading of the record discloses that there were bitter feelings and caustic remarks made by the attorneys on both sides. Each side was trying to place the blame on the other, and in the heat of the arguments things were said that should not have been said. Under the circumstances as disclosed in this case, we cannot say that this argument complained of is reversible error. There is another and stronger reason why the argument complained of is not reversible error. As stated earlier in this opinion, after the plaintiff had established the fact that the bonds in question were delivered to Rogers & Company for a specific purpose and that Rogers & Company then wrongfully negotiated the bonds with the defendant company, the burden then shifted, and that the presumption that the bank was a holder in due course was overcome, and the burden to show that the bank was a holder of the bonds in due course was upon the bank to prove. This, the bank has wholly failed to do. As was said by this court, speaking through Mr. Justice Jones in *Peru State Bank v. Waggett, supra,* "The appellant made no effort to assume the burden of proving it was a holder in due course and there is no proof in the record, so far as we are able to ascertain, that it was such a holder. While appellant in its printed statement of the case says that it purchased the note before maturity in good faith, it fails to point out where the testimony in support of this statement can be found, either in the abstract or the record. No further reference is made to this subject by appellant. It has staked all on the proposition that a preponderance of the evidence showed that the note was not

given for an illegal consideration." In the present case the defendant offered no evidence tending to show that it was a holder in due course of the bonds in question, but base their defense entirely upon the proposition that they had no notice of any defect of Rogers & Company's title to the bonds. This was a failure to establish that they were bona fide holders in due course of the bonds in question. The defendant, having failed in such proof, the only verdict possible for the jury to render would be in favor of the plaintiff. Therefore, the argument complained of could not have affected the verdict that the jury must necessarily render.

After the jury had returned their verdict and after motions for judgment *non obstante veredicto,* and a motion for a new trial and a motion in arrest of judgment had been presented by the defendant and overruled by the court, the defendant then entered a motion to strike plaintiff's suggestion of damages for failure to admit certain facts, which the plaintiff had requested the defendant to admit, prior to the day of the trial. The court sustained the motion in part and overruled it in part. Evidence was heard by the court who assessed damages for plaintiff against the defendant for $350 for failure to admit facts as requested by the plaintiff. The appellant claims the court erred in making such an allowance.

Mr. Clarence W. Heyl, Mr. Joseph F. Bartley and Mr. Herbig Younge, the attorneys representing the plaintiff, each testified to the time they had devoted to the preparation and introduction of the proof that was admitted by the court, as material to the issues involved and the value of such services. Mr. Gilbert B. Geiger, a certified public accountant, also testified to the amount of time he and his assistants devoted to investigation and preparation of the proof in the case and also testified as to the reasonable charges of such services. This evidence stands in the record un-

contradicted, as defendant offered no proof to the contrary. Part of the Supreme Court Rule 18, provides as follows: "Any party, by notice in writing . . . may call on any other party to admit . . . any specific fact or facts mentioned in such notice, which can be fairly admitted without qualification or explanation as stated therein. In case of refusal or neglect to admit the same . . . the expenses incurred in proving such fact or facts, including a reasonable counsel fee for the time and attention devoted thereto, must be ascertained at the trial and paid by the party so neglecting or refusing, whatever the result of the cause, matter or issue may be, unless at the trial or hearing, the court or a judge certify that the refusal to admit was reasonable, or unless the court or a judge, at any time, shall order or direct otherwise." In the present case it will be observed that the trial court has not certified that the refusal of the defendant to admit such facts as requested, was reasonable, but on the contrary, has rendered judgment in favor of the plaintiff for the sum of $350. From the evidence as presented in this record, it seems to us that $350 is very reasonable and a proper allowance.

We find no reversible error in the case and the judgment of the trial court is affirmed.

*Affirmed.*