## The Land Title and Trust Company v. Northwestern National Bank.

*Banks and banking—Checks—Indorsement—Forgery.*

A bank is not liable for the payment of a check on a forged indorsement where the person who committed the forgery and received the money was in fact the person to whom the drawer delivered the check, and whom he believed to be the payee named.

A person calling himself A. called on B., a property owner, under the pretense of desiring to purchase real estate and secured from him his title papers. A. took the papers to a responsible conveyancer to whom he applied for a loan on mortgage, representing himself as B. The convey-

ancer believing the man to be B. negotiated the loan and a settlement was made through a trust company to which the conveyancer introduced A. as B. A. signed the mortgage as B., and received the trust company's check drawn on itself to the order of B. This check indorsed with B.'s name was deposited in a bank by a person who had opened an account with it as R., and was collected by the bank of the trust company in the usual course of business. It did not appear that A. and R. were the same person. The fraud was discovered six months later when B. was called upon to pay the interest on the mortgage. The money was drawn out of the bank by R. four weeks after it was deposited. A. and R. disappeared, and were not heard of afterwards. *Held*, that the trust company could not recover from the bank the amount of the check.

GREEN, C. J., and DEAN, J., dissented.

Argued Jan. 16, 1900. Appeal, No. 285, Jan. T., 1899, by defendant, from judgment of C. P. No. 2, Phila. Co., June T., 1898, No. 748, on verdict for plaintiff, in case of the Land Title and Trust Company v. Northwestern National Bank. Before GREEN, C. J., MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Assumpsit to recover the amount paid on a check, the indorsement of which was forged.

The facts appear by the opinion of the Supreme Court.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $5,376.74. Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*Richard C. Dale*, with him *Alfred Moore*, for appellant.—A bank cannot be presumed to have knowledge of the handwriting of indorsers, and the liability of the bank is a liability arising out of the implied terms of the contract between the bank and its depository: Robarts v. Tucker, 16 Adol. & Ellis (N. S.), 560; United Security, etc., Co. v. Central Nat. Bank, 185 Pa. 586; Bank of England v. Vagliano Brothers, L. R. 1891, Appeal Cases, 107.

While we do not question that as between the depositor and the bank paying the check, the bank is not permitted to charge against the account of the depositor the amount of a check paid upon a forged indorsement when issued and presented in the

regular course of business, and also that the bank so paying such checks is entitled to recover from the party presenting it the amount thereof if the claim be made with due diligence, it is equally well settled that in either of these cases the right of recovery may be barred by proof of negligence in the plaintiff, or such act outside of the ordinary course of business as to take the case out of the ordinary rule. The facts connected with the issue of this check do take it out of that ordinary rule : Iron City Nat. Bank. v. Fort Pitt Nat. Bank, 159 Pa. 46; Myers v. Southwestern Nat. Bank, 193 Pa. 1 ; Rick v. Kelly, 30 Pa. 527 ; Ritchie v. Summers, 3 Yeates, 531.

*John G. Johnson,* for appellee.—Money paid by a bank upon a forged indorsement of a check to order, can be recovered by it if it proceeds promptly upon discovery of the fact of the forgery : McConeghy v. Kirk, 68 Pa. 200 ; Chambers v. Union National Bank, 78 Pa. 205 ; Iron City Nat. Bank v. Fort Pitt Nat. Bank, 159 Pa. 46; Onondaga County Savings Bank v. United States, 64 Fed. Repr. 703 ; Turnbull v. Bowyer, 40 N. Y. 456 ; State Bank v. Fearing, 16 Pickering (Mass.), 533 ; Howe v. Merrill, 5 Cushing (Mass.), 80.

The check upon the appellee was not indorsed by the party in whose favor it was drawn.

The action of the appellant was not induced by anything known to it, done by the appellee.

OPINION BY MR. JUSTICE FELL, May 21, 1900 :

The fraudulent transaction which gave rise to this litigation may be briefly stated. Dr. Herman S. Bissey was the owner of premises No. 2352 North Broad street, Philadelphia, which he wished to sell. A man who gave his name as Ashley called on Dr. Bissey and under the pretense of desiring to purchase the property got possession of the title papers, and took them to a responsible conveyancer to whom he applied for a loan of $5,000 to be secured by a mortgage of the property. The conveyancer, believing the man to be Dr. Bissey and the owner of the premises, negotiated the loan. The mortgagee, desiring title insurance by the Land Title and Trust Company, deposited with it the amount of the loan to be paid to the mortgagor when a valid mortgage should be executed. When the matter

was ready for settlement Ashley went with his conveyancer to the office of the company and was there introduced to the settlement clerk as Dr. Bissey. He signed the mortgage, Herman S. Bissey, acknowledged it before a notary connected with the company, and received from the clerk the company's check drawn on itself to the order of Herman S. Bissey. This check, indorsed Herman S. Bissey, was deposited in the Northwestern National Bank by a person who had opened an account with it as G. B. Rogers, and was collected by the bank of the trust company in the usual course of business; whether Ashley and Rogers were the same person, or different persons who had conspired to defraud the trust company and had opened an account with the bank as a means to that end, or whether Rogers was a person who was innocent in the matter, did not appear at the trial. Dr. Bissey had no knowledge of the mortgage until called on six months later for the interest. All of the parties to the transaction except Ashley and possibly Rogers, if he were a different person, acted in good faith and in that reliance on the good faith of others which is usual in such matters. Ashley by some means induced a well known and reputable conveyancer to believe that he was Dr. Bissey. The business followed the usual routine by which hundreds of such transactions are carried on every day, and nothing occurred during its course to put the other parties on their guard. On discovering the fraud which had been practiced upon it, the trust company notified the bank and demanded the return of the money paid on the check, and on the refusal of the bank brought this suit. At the trial a verdict was directed for the plaintiff.

The case as presented by the plaintiff's declaration is that of the payment by the plaintiff of a check drawn on it by a depositor to the order of a third person whose indorsement was forged, the payment having been made in reliance upon the subsequent indorsement of the defendant, the ground of liability being that the defendant by its indorsement and presentation warranted the genuineness of the indorsement of the payee, Herman S. Bissey. While by this statement of the case the trust company is considered as a banker only, whereas in fact it was both the banker and the drawer of the check, it fairly presents the fundamental question involved. A recovery must be had on the ground alleged or not at all.

Generally a bank is not bound to know the signature of the indorser of a check, and if it pays a check on a forged indorsement it can recover the money of the party to whom it was paid if it proceeds promptly on discovery of the fraud. This is upon the principle that the indorsement of a check is an implied warranty of the genuineness of the previous indorsements. But in order that a bank may recover it must appear that it has sustained a loss. If it can charge the payment to the account of the depositor, it has lost nothing, and has no cause of action. The question is then the same whether we consider the check as having been drawn by an ordinary depositor in the trust company or as having been drawn, as it was, by the real estate department of the company on the banking department. While as between the bank and the trust company as a banker, the former is bound by its implied warranty of the indorsement, still there is no cause of action unless the payment of the check was not as against the drawer of the check a good payment. The reason of the rule that when a bank pays a depositor's check on a forged indorsement, or a raised check, it is held to have paid it out of its own funds and cannot charge the payment to the depositor's account, is that there is an implied agreement by the bank with its depositor that it will not disburse the money standing to his credit except on his order. The rule applies where a check has been lost or stolen and the payee's name has afterward been forged; but it does not protect a depositor who is in fault, as in entrusting a check to one who he has reason to suppose will make a fraudulent use of it, or in so carelessly filling up a check that it may readily be altered, or in issuing a check to a fictitious person. It is confined to cases in which the depositor has done nothing to increase the risk of the bank. It should not apply when the check is issued to one whom the drawer intends to designate as the payee; first, because in such a case the risk is not the ordinary risk assumed by the bank in its implied contract with its depositor, but a largely increased risk, as it follows that a check thus fraudulently obtained will be fraudulently used; the bank is deprived of the protection afforded by the fact that a bona fide holder of a check will exercise care to preserve it from loss or theft, which are the ordinary risks; there is thrown upon the bank the risk of antecedent fraud practiced upon the

drawer of the check, of which it has neither knowledge nor means of knowledge; secondly, because in such a case the intention with which the drawer issued the check has been carried out; the person has been paid to whom he intended payment should be made ; there has been no mistake of fact except the mistake which he made when he issued the check, and the loss is due not to the bank's error in failing to carry out his intention but primarily to his own error into which he was led by the deception previously practiced upon him.

It is somewhat surprising that the question presented by this case has not arisen more frequently. There are but few decisions upon it, and none in this state. But the views which we have expressed are in entire harmony with the principles which we have recognized as governing the decision of cases arising from the forgery of notes and checks and involving kindred questions. Among the more recent of these is Iron City Nat. Bank v. Fort Pitt Nat. Bank, 159 Pa. 47, in which the cases are reviewed by our Brother MITCHELL, and it is said by him: "It is always a good defense that the loss complained of is the result of the complainant's own fault or neglect, and it would require a statute in very explicit terms to do away with so universal a principle of law founded on so incontestible a principle of justice."

In Bank of England v. Vagliano Brothers, L. R. 1891, Appeal Cases, 107, the bank had been induced to pay by notice from Vagliano Brothers of the drawing and acceptance of the draft, and as the case differs from this in that important particular it cannot be cited as a precedent. But the opinions of the lords are instructive on the questions involved in this case, and the principles announced by them would settle the contention in favor of the defendant. Lord SELBORNE said : " It is not, as I understand, disputed that there might, as between banker and customer, be circumstances which would be an answer to the prima facie case that the authority was only to pay to the order of the person named as payee upon the bill, and the banker can only charge the customer with payments made pursuant to that authority. Negligence on the customer's part might be one of those circumstances ; the fact that there was no real payee might be another."

There are however decisions in other states which are directly

in point. In Emporia National Bank v. Shotwell, 35 Kan. 360, the facts are almost identical with those in this case. An unknown person, representing himself to be Guernesy, who was the owner of a quarter section of land, obtained from Shotwell a loan secured by mortgage on Guernesy's land, and received from Shotwell in payment a draft drawn to the order of Guernesy. He indorsed Guernesy's name on the draft and sold it to the bank. In an action by Shotwell to recover of the bank the amount received by it on the draft, it was held that, although Shotwell was deceived in the transaction, the person with whom he dealt was the person intended by him as the payee of the draft, designated by the name he assumed in obtaining the loan, and that his indorsement was the indorsement of the payee named. It is said in the opinion: "The vital point in this case is that Shotwell intended the draft to be sent to the party executing the notes and mortgage, and intended it to be paid to the person to whom he sent it, and whom he designated by the name of Daniel Guernesy, because that was the name he assumed in executing the notes and mortgage ; and therefore the National Bank is protected in paying the draft to the very person whom Shotwell intended to designate by the name of Daniel Guernesy." In Maloney v. Clark & Co., 6 Kan. 82, the plaintiff was induced to send a draft drawn to the order of his brother to a stranger who in the correspondence had personated his brother. The stranger indorsed the name of the plaintiff's brother on the draft, and sold it to the defendants, who were bankers. It was held that under these facts the plaintiff could not recover.

In Robertson v. Coleman, 141 Mass. 231, a person who assumed the name of Barney took to Coleman, an auctioneer, a stolen horse and buggy to be sold. Before selling them Coleman made inquiry and received a favorable report of the standing of the real owner of the assumed name. After the sale he gave a check drawn to the order of Barney to 'the person for whom he sold the team, who indorsed it and parted with it for value. Payment of the check having been stopped, suit was brought by the holder against Coleman and a recovery had. In the opinion it was said: "It is clear from the facts that although the defendant may have been mistaken in the sort of man the person they dealt with was, this person was intended by them

as the payee of the check, designated by the name he was called in the transaction, and his indorsement of it was the indorsement of the payee of the check by that name." It would follow under this reasoning that if the check had been paid by the bank it would have been a good payment. In the case of United States v. National Exchange Bank, 45 Fed. Repr. 163, decided by the circuit court of the United States for the eastern district of Wisconsin, it was held that a bank was not liable for the payment of a check on a forged indorsement where the person who committed the forgery and received the money was in fact the person to whom the drawer delivered the check and whom he believed to be the payee named. Shuman had by fraud obtained possession of a post-office money order drawn in favor of Erben, on which he forged Erben's indorsement, and in payment of the order received a check from the postmaster drawn on the bank defendant to the order of Erben, on which he forged Erben's indorsement, and it was paid by the bank. This decision, as the others cited, is put upon the ground that the intention of the drawer of the check was that it should be paid to the person to whom he delivered it. There are a number of other cases which more or less directly recognize the principle on which these decisions are based, but in which there is no direct ruling on the subject, and we have found none which express a contrary view.

The facts of this case do not, we think, bring it within the rule that a bank paying a check to order on a forged indorsement may not charge the payment to the drawer's account, for the reason that the check was issued to the person whom the drawer intended to designate as the payee. If not within the rule, the plaintiff has no standing whatever. It is a perverted statement of the whole transaction to say that the check was intended for Dr. Herman S. Bissey, and that he alone was entitled, to receive payment. Dr. Bissey had no more right to the check than had Ashley. He had given nothing for it. No one was entitled to it, and had the truth been known it would not have been issued. Under the supposed facts on which the trust company acted, Ashley was the owner of the property; he had executed a mortgage, and was entitled to payment. The clear intention was to pay him, although there was a mistake as to the facts on which the intention was based. Nor is the solution of

the question involved to be sought in determining whether the bank was negligent in dealing with its depositor Rogers. This was suggested at the argument, but mainly as a makeweight; the case was not presented or argued on that ground, and in view of the principles by which the question of liability must be determined and of the facts as shown at the trial, it could not have been. The true ground of liability, if any existed, was that the bank collected of the trust company a check drawn to the order on which the indorsement was forged. Between the bank and the trust company, as the drawer of the check, no relation, contractual or otherwise, existed. The drawer of a check cannot maintain an action against one who collects it on a forged indorsement from the bank on which it was drawn, although the bank paying the check may. The remedy of the drawer is against the bank which pays his check, and the bank's remedy is against the person to whom it paid. The liability of the party collecting the check arises from his implied warranty of the indorsement. This liability is founded on contract, and not on negligence, and it exists if at all whether there was negligence or not. But if we consider the question in this light the plaintiff has no case. The fraud was in effect consummated when the check was delivered to Ashley. He would have received money instead of a check if he had asked for it, or he could have drawn the money in the banking department in an adjoining room. Any right of the trust company to recover must rest on the assumption of its entire good faith and innocence; and if it gave a check to Ashley with any reservation or doubt as to his honesty in the transaction, it is estopped by the fact that it gave to one of whom it had reason to be suspicious, the means of perpetrating a fraud on others. The officers of the trust company of course had no doubt. They acted in entire good faith, and it may be conceded with ordinary prudence; but the loss was occasioned by their error, and there is no reason, legal or equitable, why it should be shifted to another.

The judgment is reversed.

MR. JUSTICE DEAN, dissenting:

A man representing himself as John Ashley called upon Dr. Herman S. Bissey, at his residence No. 1630 North Sixteenth

street,in the city of Philadelphia; he was entirely unknown to Bissey, but pretended that he desired to purchase a house and lot, No. 2352 North Broad street, a property owned by Bissey, and which he wanted to sell. They agreed on the terms, and Ashley got from Bissey his deed for the premises, on the pretense that he wanted to have it examined, and took it away with him, first, however, paying $5.00 on account. With the deed in his possession, Ashley called upon R. Taylor Middleton, a real estate broker of unquestioned good character, and representing himself as Dr. Herman S. Bissey, the grantee in the deed, opened with him negotiations for a loan of $5,000 on a mortgage of the property. Bissey was unknown to Middleton; the latter, assuming the truthfulness of the representations, introduced Ashley to the Land Title and Trust Company, this plaintiff, as Bissey, the grantee in the deed, that he might procure a title insurance policy on the premises, and also as a party who might place for him the mortgage loan. Bissey was wholly unknown to the officers of the company. The title was insured and the loan granted. The " Title department" of the company took the mortgage, and delivered to the pretended mortgagor, Bissey, its check, as follows:

"PHILADELPHIA, Nov. 1, 1897.
"THE LAND TITLE AND TRUST COMPANY:
"Pay to the order of Herman S. Bissey four thousand nine hundred and twenty-two and $\frac{25}{100}$ dollars. Pro. of Mtg. on No. 2352 N. Broad St.

"WILLIAM R. NICHOLSON, President.
"$4,922.25.            J. LORD RIGBY, Settlement Clerk."

The pretended Bissey then forged the name of Herman S. Bissey on back of the check, and followed this with indorsement of name G. B. Rogers, and presented it for deposit to the account of the latter, at the Northwestern National Bank, this appellant; the bank accepted it, indorsed it for collection, and by its messenger sent it back to the " Title company," by whom it was paid in the ordinary course of business. The man who assumed the name of Rogers, soon after, by checks on the National Bank, drew out the money. In about six months thereafter, the Title company discovered the forgery of Bissey's name, and the worthlessness of the mortgage. Demand for

payment being refused by the National Bank, this suit was brought. There was no dispute as to the facts; the court below directed the jury to find for plaintiff, and we have this appeal by the National Bank, defendant, assigning for error, the peremptory instruction of the court below. A majority of my brethren are of opinion the court erred; I think it was right. I put the case wholly upon the principle or rule, that, where one of two innocent persons must suffer by the wrong of a third, he shall stand the loss, whose fault or neglect made the loss possible. Now notice the facts, as concerns the Land Title company. It transacts business of millions of dollars annually in a large city; insures titles and places mortgages; probably, not one tenth of those who deal with it are personally known to its officers; how shall it identify them, and thus guard against swindlers? It seems to me, the only practicable way is, to have its customers introduced by reputable business men who are known to the officers. That was the method pursued here. Mr. Middleton, well known to the bank, who had himself been imposed upon, introduced the swindler to the Title company as Dr. Herman S. Bissey, the owner of premises No. 2352; and this pretended Bissey had the deed in his possession. Shall the company call in other reputable business men to corroborate one whose prudence and integrity are unquestioned? The company, in the exercise of all the care that any reasonable rule of law or business conduct required, necessarily assumed, that Mr. Middleton represented the truth when he said to them, in effect: This man is Dr. Herman S. Bissey, the owner of premises No. 2352 North Broad street. It is argued that if the Title company had paid in bank bills, instead of by check, it would have been the loser. A sufficient answer to this is, that it did not pay in bank bills, but by check. A conjecture as to what might have been the case on some other state of facts, helps us not in determining the issue. We may conjecture, that if, without being identified by one well known to it, the Title company had assumed the identity of Bissey from the mere possession by him of the deed, the loss would have been its own. But to impose the penalty; we must assume some degree of fault or neglect on part of the Title company; the proof is undisputedly the other way; it did not pay the swindler the money; it did not deliver to him its check

until his identity was vouched for by one in every way worthy of belief. The pretended Bissey had the check; he, with very rare exceptions, could not have drawn the money at any bank teller's window in this city without proof of identity, that is, that he was Dr. Herman S. Bissey, the payee. It is argued, that if the swindler had gone from the " Title department " to the company's paying teller, in the same building, it would have been cashed without proof of identity; if he had done so, and received the money, that would have been the fault of the paying teller, and of course the Title company would have had to bear the loss; but he did not present it to the paying teller of the drawer. Why? Because, it is fair to assume he wanted no questions asked by one who might know the real Bissey, or require that some one vouch for him as the real Bissey. In fact, he had concocted and prepared a plan to cheat the defendant bank; one by which he could get the check cashed without identification. We take the testimony of defendant's cashier. He says the check drawn November 1 in favor of Bissey was received by him on deposit, November 3, from George B. Rogers, it having been previously indorsed by Bissey. Being the second indorser, the cashier had a right to assume Rogers guaranteed the genuineness of Bissey's signature, the payee; but who was Rogers, who guaranteed the genuineness of the indorsement of payee in a $5,000 check? The cashier says, a man representing himself to be Rogers, called at the bank with his wife less than three weeks before, and rented a safe deposit box, with instructions that his wife was to have access to it; he had no introduction, but said he lived in the neighborhood, and told a " pretty straight story;" the bank designated a box for him; the assumed Rogers then came several times and apparently used the box, then on November 3, as we have said, less than three weeks afterwards, deposited the land title check; in about four weeks more drew it all out but twenty-five cents; the bank had not heard of or known him before the renting of the box; it has not heard of him since he drew the last check. Whether his real name was Rogers, except from the " pretty straight story " he told the cashier, no one knows, for the bank made no further inquiry; whether he ever did business in Philadelphia, or resided in the neighborhood of the bank, no one knows, for inquiry since has

resulted in no information. Yet this defendant bank, on the guarantee of a total stranger, accepts as genuine the forged indorsement of Bissey, and in collecting the check, represents to the Land Title Company by its own indorsement, that the preceding ones are genuine. It could not have got the money out of which it was defrauded, unless it had done so. On these facts, and not a single one of them is disputed, whose neglect enabled the wrongdoer to successfully perpetrate the cheat? The Title company did not accept a " pretty straight story " from him; Middleton had to introduce and vouch for him; he did not present the check to the paying teller of that company when he had possession of it, for, as stated by Mr. Nicholson, the president, that officer had nothing whatever to do with or knowledge concerning the operations of the real estate department; the wrongdoer believed or feared identification would be required there. He preferred the bank which believed a total stranger's " pretty straight story " and the result shows that while his conduct was crooked, his judgment was correct. Everyone connected with this transaction was deceived by the pretexts of the swindler, except the Land Title Company, the one now, by the judgment of this court made to suffer. Dr. Bissey, allured by the prospects of a sale, trusts a total stranger with possession of his deed; Mr. Middleton believes he is Dr. Bissey, because he says so, and exhibits Bissey's deed; the defendant believes he is Rogers, because he says so, rents him a box, opens with him an account, accepts his say as to the genuineness of Bissey's forged signature, undoubtedly forged by himself. The Title company believes nothing he says; it does believe what Middleton says, for it could not do otherwise, without practically stopping business.

The fraud was only possible, in view of the undisputed facts, because of the childish credulity and consequent neglect of the most ordinary business precautions by defendant.

I would affirm the judgment.

GREEN, C. J., concurs in the foregoing dissenting opinion.

The judgment entered by the Supreme Court in the above case was amended on May 29, 1900, upon petition of the appellant by granting a new venire.