Max Greenberg, Trading as Metropolitan Currency Exchange, Appellee, v. A & D Motor Sales, Inc., Appellant.

Gen. No. 44,993.

Heard in the second division of this court for the first district at the December term, 1949. ▓▓▓▓▓ Opinion filed May 23, 1950. Released for publication June 6, 1950.

JOHN M. NAGLE, of Chicago, for appellant; HAROLD L. EISENSTEIN and CARL B. APLON, both of Chicago, of counsel.

EDWARD D. LAPPERRE, of Chicago, for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Plaintiff brought suit to collect the sum of $700, the amount of a check dated August 25, 1948, executed by the defendant corporation and made payable to the order of one Wallace Gross. The check, endorsed with

the name of the payee, had been presented to plaintiff at his currency exchange and cashed by him. It was then deposited in his bank, South East National Bank. Subsequently the drawee bank, South Side Bank and Trust Company, returned the check to plaintiff's bank, together with an affidavit alleging that the endorsement of the payee's name on the back of the check was a forgery, and plaintiff's bank account was thereupon charged with the amount of the check. Pursuant to hearing, the court entered judgment in favor of plaintiff, from which defendant appeals.

Defendant in its amended answer averred that plaintiff did not receive the check from the payee thereof, that the endorsement upon the check was not that of the payee therein named, Wallace Gross, that the supposed or pretended endorsement was a forgery, and that plaintiff had no valid or legal title to the check.

The only witness upon the hearing was the plaintiff, Max Greenberg, whose currency exchange at 750 East 51st street was only a few doors from the place of business of the defendant, A & D Motor Sales, Inc. Greenberg testified that on August 25, 1948 "a party came in to cash the check and made himself known by various identifications, a driver's license. He stated his name was Wallace Gross and asked me to cash the check. I told him he would have to show identifications and that I would have to call further. I telephoned David Eisenstein who was the signer of the instrument. I know Mr. Eisenstein for some time and knew I was talking to him. I told him I had a check for $700.00 and asked him if the check was good and told him it was presented for cashing. He said he had bought a car and that the check was good and that it was all right to cash the check. I then required further identification and made notes on the back of the check. The check was endorsed in my presence and delivered

87

to me and I paid him the face value of the check, $700.00 minus my fee of $3.37. I deposited the check for collection in my bank. It was paid. It was returned a few days later and my account charged with $700.00.''

From the brief record and testimony presented upon the hearing, it appears that a person who made himself known as Wallace Gross sold an automobile to defendant, for which he received a check payable to Wallace Gross for $700. Defendant was undoubtedly under the impression that the person to whom it delivered the check payable to Wallace Gross, bore that name, and it intended that he have the proceeds thereof. Almost immediately after the check was drawn, it was presented at the currency exchange for cashing, and plaintiff, subsequent to talking with one of defendant's agents and securing his approval to cash that particular check, cashed it. Plaintiff had no knowledge of any irregularities.

■■ Defendant stresses the point that no reply was filed to its amended answer, and that no evidence was offered at the trial to rebut the defense of forgery. Examining the abstract, we find in plaintiff's statement of claim the allegation that ''defendant issued to a certain person purporting to be Wallace Gross, its certain check number 14229 in the amount of $700.00; that on said date, and subsequent to its delivery to said person allegedly Wallace Gross, plaintiff became the holder in due course of said check, for value, and without knowledge of any defenses between the parties thereto, nor of any defects thereof.'' In its original answer defendant admitted that on ''August 25, 1948, it issued a certain check to Wallace Gross in the sum of $700.00, but denies that on said date, or any subsequent date thereto, the plaintiff became the holder in due course of said check for value and without knowledge of any defense between the parties nor of any defects thereof.'' The amended answer contains

substantially the same averments. It thus appears that defendant at no time denied the important allegation that it had issued a check to "a certain person *purporting* to be Wallace Gross," and that "subsequent to its delivery to said person *allegedly* Wallace Gross, plaintiff became the holder in due course of said check." There being no denial of this material allegation, it was not necessary for plaintiff to reply to the amended answer; upon the face of the pleadings it stands admitted that the person to whom defendant issued the check which was later cashed by plaintiff, was an impostor; and this is important because the statute and the ordinary rules applicable to forgery of negotiable instruments are not applicable to the circumstances of this case, as will hereinafter appear. That the person who received the check from defendant and who cashed it at plaintiff's currency exchange was an impostor also appears from the following testimony of plaintiff: "I saw the person who made the statement it was a forged endorsement. He was not the person who delivered the check to me." Under the "impostor rule," "a majority of the courts adhere to the doctrine that where the drawer delivers a check, draft, or bill of exchange to an impostor as payee, supposing that he is the person he has falsely represented himself to be, the impostor's endorsement in the name by which the payee is described is regarded as a genuine endorsement as to subsequent holders in good faith." *Security-First Nat. Bank v. United States,* 103 F. 2d 188. *Russell v. Second Nat. Bank of Patterson,* 136 N. J. L. 270, 55 A. 2d 211, contains an exhaustive discussion of the principles involved, and cites numerous authorities supporting the view that "where the drawer delivers a check to an impostor as payee supposing that he is the person he had falsely represented himself to be, the impostor's subsequent endorsement of the paper in the name by which the

payee is described is to be regarded as a genuine endorsement between the drawer and the drawee who pays the paper on such endorsement.''

█ The defense is predicated chiefly on the contention that since the endorsement on the check was a forgery, plaintiff is precluded from recovery under chapter 98, paragraph 43 of the Illinois Revised Statutes 1949 [Jones Ill. Stats. Ann. 89.043], which provides that ''where a signature is forged or made without authority, it is wholly inoperative, and no right to retain the instrument or to give a discharge thereof, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority.'' However, the authorities are fairly in accord in holding that, under the circumstances presented in the case at bar, the impostor's endorsement in the name by which the payee is described *is to be regarded as a genuine endorsement between the drawer and the drawee who pays the paper on such endorsement*—and is not a forgery. Consequently, the statute upon which defendant relies is inapplicable. *Montgomery Garage Co. v. Manufacturers' Liability Ins. Co.,* 94 N. J. L. 152, 109 Atl. 296; *Emporia Nat. Bank v. Shotwell,* 35 Kan. 360, 11 Pac. 141; *Jamieson & McFarland v. Heim,* 43 Wash. 153, 86 Pac. 165; *Land Title & Trust Co. v. Northwestern Nat. Bank,* 196 Pa. 230, 46 Atl. 420; *McHenry v. Old Citizens' Nat. Bank of Zanesville,* 85 Ohio St. 203, 97 N. E. 395; *Boatsman v. Stockmen's Nat. Bank,* 56 Colo. 495, 138 Pac. 764; Brannan's Negotiable Instruments Law Annotated, 6th ed., pp. 349–358.

The Effect of Imposition by Impersonation in the Law of Bills and Notes is briefly but pointedly discussed in an early article appearing in 34 Harvard Law Review 76, in which it is said that ''where the

impostor is physically present, the intent of the victim to deal with the personality before him is deemed paramount [citing several cases]. The intent to deal with the individual whom the impostor is impersonating is *ex necessitate* disregarded.'' Continuing, the author makes the following observation, also supported by authority: ''Though the argument *contra* has been presented with much vehemence, it is hard to see why any loss due to fraudulent impersonation should fall upon the indorsee. . . . To cleave too closely to the contention that this is a forgery through which the holder cannot acquire any rights is fallacious. . . . Before we can say that there has been a forgery defeating any rights of the purchaser against the drawer, we must first determine whether the person who purports to sign is the person intended by the drawer to sign. To decide that there has been a forgery begs the very question in issue. Again, too much emphasis should not be laid on the name. A name is not the sole method of designating an individual. If the name *per se* were controlling, then a John Smith who wrongfully indorsed a check payable to John Smith, another individual, should pass a good title to the instrument. But such is not the law; the man who was intended as payee should indorse, and no other. . . .

''In these cases, the negligence or diligence of the defrauded party—generally the drawer of the instrument—should not, as a rule, be material in determining his liability. Nevertheless a rule which will protect the *bona fide* purchaser accords with justice. The consequences of the mistake should fall upon the drawer rather than on the purchaser, since the mistake is primarily the former's, whether he has himself been deceived or has deliberately tried to shift the burden of identification by giving the impostor a negotiable instrument instead of cash. The fraud upon the drawer facilitated a fraud upon the purchaser. In short, the

defrauded drawer of the instrument should have an equitable or personal defense rather than a legal or real defense. No difficulty should be experienced in handling the variety of facts which may be presented, if impersonation is treated like fraud and not like forgery. In this way some certainty, an undoubtedly desirable attribute in this branch of the law, can be approximated.''

The defendant in this proceeding is engaged in the business of buying and selling automobiles, and in such occupation it should be required to give careful consideration to the ownership and title of any car that it purchases. If it had been a cash transaction and defendant had made an error such as appears to have been made in this instance, it would, as a practical matter, have slight recourse; it should not have greater protection because it issued a check and induced plaintiff to cash it. Plaintiff in his part of the transaction took every precaution that could be taken consistent with the orderly conduct of a currency exchange. He called Eisenstein, whom he knew well, and ascertained from him the fact that the check had been issued to the person who presented it for cashing at the exchange, and also examined the identification data.

The authorities cited and the numerous cases referred to therein are in consonance with the ''impostor rule'' that the endorsement in the name by which the payee was described, and under the circumstances presented here, constituted a genuine endorsement as to plaintiff who cashed the check in good faith. Accordingly, the finding and judgment of the municipal court should be affirmed, and it is so ordered.

*Finding and judgment affirmed.*

SCANLAN and SCHWARTZ, JJ., concur.