GRAND WESTERN CURRENCY EXCHANGE, INC., Plaintiff and Counterdefendant-Appellee, v. A:M SUNRISE CONSTRUCTION COMPANY, Defendant and Counterplaintiff and Appellant and Third-Party Plaintiff and Counterdefendant-Appellee (Gemco Wholesale Roofing, Inc., Third-Party Defendant and Counterplaintiff-Appellant; Phoenix Roofing Company, Inc., Third-Party Defendant).

First District (1st Division)   No. 85—3432

Opinion filed October 26, 1987.

Di Monte & Lizak, of Chicago (Alan L. Stefaniak and Riccardo A. Di Monte, of counsel), for appellant.

Hanson & Shire, P.C., of Chicago (Paul H. Strecker and Richard K. Shire, of counsel), for appellee Grand Western Currency Exchange, Inc.

Patrick J. Leston, of Glen Ellyn, for appellee Phoenix Roofing Company, Inc.

JUSTICE CAMPBELL delivered the opinion of the court:

This appeal arises out of a complaint filed on November 25, 1981, by plaintiff, Grand Western Currency Exchange, Inc. (Grand Western), against defendant, A:M Sunrise Construction Company (A:M), and out of a third-party complaint and counterclaim filed on October 27, 1983, by A:M against Gemco Wholesale Roofing, Inc. (Gemco), Phoenix Roofing Company, Inc. (Phoenix), and Grand Western. In the original complaint, Grand Western alleged that it was a holder in due course and sought judgment against A:M for $3,570, the amount of a check made payable to Phoenix by A:M, endorsed by Robert Durschlag as president of Phoenix, and cashed by Grand Western on October 29, 1981 (the $3,570 check). On November 2, 1981, due to a stop payment order which had been issued by A:M earlier that day,[1] the drawee bank refused payment on the $3,570 check.

In its answer and affirmative defense to Grand Western's complaint, A:M denied that Grand Western was a holder in due course, on the grounds that: (1) the endorsement on the $3,570 check was a forgery because Robert Durschlag had not been the president of Phoenix at the time he endorsed and cashed the $3,570 check; and (2) Durschlag had had no authority to cash checks made payable to Phoenix.

The third-party complaint and counterclaim filed by A:M on October 27, 1983, sought a declaratory judgment as to the rights of Gemco, Phoenix and Grand Western to the $3,570 sum. In its com-

---

[1]A:M had allegedly received a telephone call from the bookkeeper at Phoenix earlier that day who informed A:M that the $3,570 check had been lost and requested that A:M stop payment on it.

plaint, A:M alleged that after it had issued the $3,570 check to Phoenix, it had discovered defects in the materials and labor furnished by Phoenix which required A:M to pay an additional $1,053 to another roofing company to correct. In its prayer for relief, A:M requested that in the event the court finds that Grand Western is entitled to the $3,570, the court also find that A:M is not liable to either Gemco or to Phoenix for the sum, and that the court enter a judgment in favor of A:M and against Phoenix and Gemco in the amount of $1,053. In the alternative, A:M requested that in the event the court determines that Grand Western is not a holder in due course: (1) the court declare that the assignment to Gemco from Phoenix is not binding on A:M and that A:M is entitled to retain the sum of $3,570[2]; or (2) if the court determines that Gemco's assignment is valid as to the sum paid by A:M, that A:M be allowed to retain $1,053 of the $3,570 as a set-off for costs incurred to correct and repair the defects in the work performed by Phoenix.[3] On April 9, 1984, Gemco filed its answer to A:M's third-party complaint and also filed a third-party counterclaim against A:M, alleging that, by order of the Federal district court, it held a valid assignment of the assets and accounts receivable of Phoenix, which included the $3,570 sum paid to Phoenix by A:M.

Following a bench trial, the court entered judgment in favor of Grand Western and against A:M as to the sum of $3,570 and further held that: (1) A:M, Phoenix, and Gemco had no interest in the $3,570 check; (2) A:M was not liable to either Phoenix or to Gemco for said sum; and (3) A:M was entitled to $1,053 from Phoenix for defective workmanship. The trial court later denied A:M's motion for reconsideration and granted Grand Western's motion for statutory interest and costs. On appeal, A:M contends that: (1) Grand Western is not a holder in due course of the $3,570 check and, thus, took the check subject to A:M's defenses; and (2) the trial court erred in (a) admitting into evidence a check, dated October 7, 1981, which had been issued by A:M to Phoenix, endorsed by Durschlag as president of Phoenix, cashed by Grand Western, and paid in full by the drawee bank; and (b) interpreting a Phoenix corporate resolution which purportedly authorized Durschlag to endorse checks made payable to Phoenix.

In addition, Gemco cross-appeals, arguing that if this court re-

---

[2]Gemco claimed an interest in the sum pursuant to an order entered by the Federal district court in Sessler v. Durschlag, No. 81 C 6138, dated January 22, 1982, which assigned all rights, title and interest in Phoenix's accounts receivable to Gemco.

[3]Phoenix failed to appear or to answer A:M's third-party complaint and was defaulted by court order on October 30, 1984.

verses the trial court's judgment and awards the $3,570 to A:M, A:M should pay said amount to Gemco on the ground that the sum represents an accounts receivable of Phoenix, all of which were assigned to Gemco pursuant to court order. For the following reasons, we affirm the judgment of the trial court.

Initially, A:M argues that Grand Western was not a holder because Durschlag's forged endorsement constituted an unauthorized signature, precluding passage of good title to Grand Western. A:M further argues that even if Grand Western were a holder, it was not a "holder in due course" because it had not acted in good faith in verifying Durschlag's authority to cash the $3,570 check and the irregularities of the transaction had put Grand Western on notice of a defense or claim against the $3,570 check. The following sections of the Uniform Commercial Code (Ill. Rev. Stat. 1985, ch. 26, par. 1—101 *et seq.*) are relevant to our determination:

> " 'Holder' means a person who is in possession of a document of title or an instrument or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank." Ill. Rev. Stat. 1985, ch. 26, par. 1—201(20).

> "(1) A holder in due course is a holder who takes the instrument
> > (a) for value; and
> > (b) in good faith; and
> > (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." Ill. Rev. Stat. 1985, ch. 26, par. 3—302(1).

> "(1) The purchaser has notice of a claim or defense if
> > (a) the instrument is so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms or ownership or to create an ambiguity as to the party to pay; * * *
> > > * * *

> (2) [t]he purchaser has notice of a claim against the instrument when he has knowledge that a fiduciary has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty." Ill. Rev. Stat. 1985, ch. 26, pars. 3—304(1)(a), (2).

> "(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.

(2) Any unauthorized signature may be ratified for all purposes of this Article. Such ratification does not of itself affect any rights of the person ratifying against the actual signer." Ill. Rev. Stat. 1985, ch. 26, par. 3—404.

■■ We first address A:M's contention that Grand Western was not a holder because Durschlag's forged endorsement constituted an unauthorized signature under section 3—404 of the Code, which prevents the passage of good title to Grand Western. In arguing that Durschlag's signature was a forgery, A:M does not allege that Durschlag signed another person's name. Rather, it argues that Durschlag forged his title as president and did not have authority to endorse the check. Although the trial court found that Durschlag had never been president of Phoenix, the record belies the allegation that Durschlag did not have authority to endorse checks made payable to Phoenix. First, an order entered by the Federal district court on January 22, 1982, in Sessler v. Durschlag, No. 81 C 6138, orders Durschlag to endorse cashier's checks made out to Phoenix, for payment to Gemco as assignee of all of the assets of Phoenix. It is interesting to note that although Robert Stebelton, alleged president of Phoenix, was a party-defendant to the Sessler action, it was Durschlag, not Stebelton, who was ordered to endorse the checks. Second, on at least five prior occasions, Grand Western had cashed checks made payable to Phoenix and endorsed by Durschlag and had received funds from the respective drawee banks.

Further, pursuant to section 3—404, an unauthorized signature, if ratified, does not act as a bar to passing title. In the present case, we find that the five prior occasions on which Durschlag endorsed checks payable to Phoenix and cashed them at Grand Western constitutes ratification of Durschlag's apparent authority to endorse the corporate checks. (*Reavy Grady & Crouch Realtors v. Hall* (1982), 110 Ill. App. 3d 325, 442 N.E.2d 307.) Thus, Durschlag's signature was sufficient to pass title to Grand Western. Further, we find that the cases upon which A:M relies are factually distinguishable and unpersuasive, on the ground that they address the situation where the endorser has the same name as the payee, but is not the intended payee. *Beattie v. National Bank* (1898), 174 Ill. 571, 51 N.E. 602; *Kolmar, Inc. v. Moore* (1944), 323 Ill. App. 323, 55 N.E.2d 524.

Having determined that Grand Western was a holder within section 1—201(20) of the Code, the next issue to be addressed is whether Grand Western was a holder in due course, *i.e.*, whether it took the $3,570 check for value, in good faith, and without notice that it was overdue or had been dishonored or of any defense or claim against it.

It is undisputed that Grand Western took the $3,570 check for value, paying Durschlag the face amount in cash, less any fee. However, A:M claims that Grand Western did not act in good faith and that it had notice of a defense or claim.

With respect to the good-faith requisite, A:M states repeatedly that Grand Western did not act in a commercially reasonable manner. However, A:M neglects to cite to any legal authority in support of its position. Instead, A:M opines that a request for a written corporate resolution from Phoenix or a telephone call to the Phoenix offices verifying Durschlag's status are minimum steps that Grand Western should have followed.

At trial, Grand Western's manager stated that she had called Phoenix to verify Durschlag's authority and that Durschlag's signature card on file at Grand Western contained a notation that such a call had been made. In addition to the signature card, Grand Western had been introduced to Durschlag as owner of Phoenix by a long-time customer, had verified with the drawee bank that payment had not been stopped, and had had five previous transactions with Durschlag. In our view, all of the aforementioned facts indicate that Grand Western had acted in a commercially reasonable manner in cashing the $3,570 check. (See *Greenberg v. A. & D. Motor Sales, Inc.* (1950), 341 Ill. App. 85, 93 N.E.2d 90 (the court held that plaintiff currency exchange had taken "every precaution that could be taken consistent with orderly conduct of a currency exchange" when it had ascertained from the maker that a check had been issued to the payee and had examined the payee's identification data).) Because A:M has failed to present legal authority which sets forth a duty that Grand Western has breached, we conclude that Grand Western negotiated the $3,570 check in good faith. In reaching this conclusion, we agree with the statement made by this court in *Hatton v. Money Lenders & Associates, Ltd.* (1984), 127 Ill. App. 3d 577, 582, 469 N.E.2d 360:

> "That negotiable paper is freely transferable in the business community is perhaps its greatest attribute. To require a party who wishes to purchase negotiable paper to pursue a lengthy inquiry not required by the Commercial Code would unduly burden such transactions and impede the free exchange of negotiable paper."

With respect to the requirement that a holder in due course must take the instrument without notice that it is overdue, has been dishonored or that there is any defense against or claim to it, A:M contends that the circumstances of the transaction were so irregular that Grand Western was put on notice that Durschlag was not authorized

to cash the $3,570 check. Specifically, A:M argues that it is highly unusual for a corporation to cash checks at a currency exchange. Under the present fact situation, we disagree. In contradiction to A:M's assertion, the prior course of conduct between Grand Western and Durschlag indicates that it was not unusual for Durschlag to cash checks made out to Phoenix at Grand Western.

A:M further contends that Durschlag negotiated the check for his own benefit. There is no evidence in the record to support this allegation. The record does suggest that Phoenix was having some financial problems, *i.e.*, Gemco's suit in Federal court and the involuntary dissolution of Phoenix for failure to pay corporate franchise taxes. Thus, it is possible that Phoenix's suppliers would accept only cash payments, that Phoenix wanted to safeguard its accounts receivable from attachment, or that Phoenix was attempting to circumvent the assignment to Gemco. In other words, the fact that Durschlag cashed the checks does not prove that he was depositing the cash in his personal bank account or otherwise using the cash for his personal benefit.

■ The personal benefit factor is the distinguishing factor between the present case and the following cases, which are relied upon by A:M: *Maley v. East Side Bank* (7th Cir. 1966), 361 F.2d 393 (bank cashed corporate checks for officer and deposited funds from checks in officer's personal account); *Milano v. Sheridan Trust & Savings Bank* (1926), 242 Ill. App. 362 (corporate funds used to credit personal account); and *Owens v. Nagle* (1929), 334 Ill. 96, 165 N.E. 165 (trustee endorsed note in satisfaction of personal debt). Further, *Paine v. Sheridan Trust & Savings Bank* (1929), 255 Ill. App. 250, an additional case relied upon by A:M, is also distinguishable on the ground that prior dealings put the bank on notice of irregularities. By contrast, the prior dealings between Grand Western and Durschlag buttressed the reliance factor. Viewing the record as a whole, it is our opinion that Grand Western had not possessed information sufficient to put it on notice of any irregularity with respect to the $3,570 check.

■ Next, A:M contends that the trial court erred in admitting into evidence: (1) the October 7, 1981, check which had been made payable to Phoenix by A:M, endorsed by Durschlag and cashed by Grand Western; and (2) an incomplete corporate resolution which authorized Durschlag to endorse checks and to deposit them, but failed to include the name of the bank. A:M claims that the October 7 check and the corporate resolution were immaterial and irrelevant. We note that A:M offered no legal support for its position other than citations to factually inapposite cases which define the terms "relevancy" and "materiality."

Upon review of the record, we find that the October 7, 1981, check was both relevant and material with respect to establishing a course of conduct between Grand Western and Phoenix, which is relevant to the issue of whether Grand Western had acted in good faith in cashing the subsequent $3,570 check. With respect to the corporate resolution, although the resolution did not contain the name of the bank, it was signed by Stebelton, allegedly president of Phoenix. In our view, this is relevant to the issue of whether Durschlag had authority to endorse corporate checks. According to the resolution, Durschlag's sole signature was sufficient. Finally, in light of our determination to affirm the judgment of the trial court, the issue raised in Gemco's cross-appeal is moot and need not be considered by this court.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

QUINLAN, P.J., and BUCKLEY, J., concur.