Third Division
November 24, 2010

1-09-1292

| | | |
|---|---|---|
| NEW RANDOLPH HALSTED CURRENCY EXCHANGE, INC., | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant and Cross-Appellee, | ) ) | 06 M1 128058 |
| v. | ) ) | |
| REGENT TITLE INSURANCE AGENCY, LLC, | ) ) | Honorable Ronald F. Bartkowicz, |
| Defendant-Appellee and Cross-Appellant. | ) | Judge Presiding. |

JUSTICE NEVILLE delivered the opinion of the court:

New Randolph Halsted Currency Exchange (New Randolph) cashed a check drawn on a bank account of Regent Title Insurance Agency (Regent). Regent stopped payment on the check. New Randolph sued Regent for payment, claiming that New Randolph qualified as a holder in due course of the check. Following a bench trial, the trial court held that New Randolph was not a holder in due course because the check-cashing transaction raised several warning signals that should have alerted New Randolph to the possibility of fraud. The court entered judgment in favor of Regent.

New Randolph also sought sanctions against Regent for its responses to requests to admit. The court imposed sanctions for one of the responses but not for others.

On New Randolph's appeal, we find that New Randolph took commercially reasonable precautions before cashing the check, and therefore it qualifies as a holder in due course, and we reverse the trial court. We also find that the trial court did not abuse its discretion by denying part of New Randolph's motion for sanctions, and we affirm the trial court. On Regent's cross-appeal,

we find that the trial court did not abuse its discretion by imposing the sanction against Regent, and we affirm the trial court. Thus, we affirm in part, reverse in part, and remand this case to the trial court.

BACKGROUND

Regent served as a settlement agent for closing real estate transactions. Regent cut checks to distribute funds to all the parties to such transactions.

On December 23, 2005, New Randolph cashed a check from Regent, made out to Charae Pearson, for $1,945.99. Four days later, New Randolph cashed another check for Pearson, again from Regent, this time for $2,500. On January 11, 2006, Pearson brought to New Randolph Regent's check number 22221, for $29,588.31. Unlike the prior checks, which spelled Pearson's name correctly, this check showed the payee as "CHAREA PAERSON." The check indicated that Pearson received it as a "LOAN PAYOFF." Pearson presented the check to Patrice Keys, manager of New Randolph. Pearson showed Keys her state identification card, which had been issued on December 30, 2005. Pearson told Keys that Regent issued the check to her to pay her a commission she earned from the sale of property.

PLS Check Cashers, which owned New Randolph, did not authorize Keys to cash checks in excess of $5,000 without approval from her supervisor. Keys contacted Sandra Arizaga of PLS. Arizaga authorized Keys to cash the check.

Police arrested Pearson on January 23, 2006, charging her with check fraud. Two days later, police arrested Tatiana Auson, an employee of Regent, on the same charge. Regent had hired Auson to work as a funder, meaning that Regent authorized Auson to cut checks for the parties to real estate

transactions. According to Regent's investigator, Auson cancelled checks intended for parties to real estate transactions, then issued new checks to different payees for the amounts of the original checks. Pearson admitted that Auson gave her the three checks New Randolph cashed for Pearson. Pearson kept about $5,000 of the proceeds from the checks, and she gave the remainder to Auson. All three checks appeared to bear the signature of Karen Hendricks, who had authority to sign checks on behalf of Regent.

Regent told its bank to stop payment on the check. New Randolph sued Regent for payment of the check, claiming that its status as a holder in due course entitled it to payment, despite the evidence that Auson and Pearson conspired to defraud Regent. See 810 ILCS 5/3-302 (West 2006); First of America Bank-Northeast Illinois, N.A. v. Bocian, 245 Ill. App. 3d 495, 499 (1993).

Before the trial, New Randolph sent to Regent a request to admit certain facts, including the following:

"1. On or about January 11, 2006, Regent Title drew its check number 22221 in the amount of $29,588.31 on American Chartered Bank of Downers Grove, Illinois payable to Charea Paerson (the 'Check').

***

3. The Check bears an authorized signature of Regent Title."

Regent answered:

"[1.] Regent denies it drew check number 22221 on American Chartered Bank or that anyone was authorized to cut such a check to Charea Paerson. Regent admits Charea Paerson was listed as payee on such numbered check. Regent denies

the remaining allegations in this request to admit.

***

[3.] Regent denies Request 3 and further states that no Regent employee was authorized to cut such a check to Ms. Paerson."

At the trial, Keys testified that she looked up Pearson in PLS's database and found that she had recently cashed two other checks from Regent for lesser amounts. Keys called Regent, using a phone number she found in PLS's database. The person who answered the call for Regent confirmed that Regent issued the check to Pearson for the dollar amount shown, as payment of a commission. According to the person who answered the call for Regent, Pearson earned the commission from her work as an employee of Regent.

Arizaga, who worked as director of operations for PLS, testified that she approved about three checks each week for amounts exceeding the amount of Regent's check number 22221. She spoke with Keys about the check, and then she looked up the phone number for Regent at Regent's Web site. Arizaga testified that she called the number and asked to speak with someone about verifying a check. The woman with whom she spoke confirmed that Regent issued the check to Pearson in the amount shown. Arizaga then contacted American Chartered Bank, which confirmed that the check came from a valid account with sufficient funds to cover the check, and Regent had not stopped payment on the check.

On cross-examination, Arizaga admitted that according to PLS's manual, the misspelling of Pearson's name could signal fraud. Pearson's recent identification card should also raise suspicion. Arizaga did not remember whether she noticed that the check indicated its purpose as "LOAN

PAYOFF," instead of listing the payment as a commission.

Regent introduced PLS's manual into evidence. The manual emphasizes that PLS earns its fees by cashing checks, so the employee should "[s]pend *** time proving that the check can be cashed and not looking for excuses not to cash it." (Emphasis omitted.) The manual identifies several signs that a check might not be valid, including several of the factors present in this case. According to the manual, the employee should "verify that the check is good" by "phoning the maker." (Emphasis omitted.)

William Andrews, the president of Regent's commercial division, testified that Pearson never worked for Regent, and no woman working at Regent would have fielded a call about who worked at Regent. Andrews admitted that the check appears to bear Hendricks's authorized signature. Andrews did not know whether Hendricks actually signed the fraudulently issued check.

The trial court summarized its findings of fact. It found that Arizaga and Keys called Regent to verify the check. When they called, they failed to ask about the discrepancy between the purpose shown on the check and the purpose Pearson stated. According to the court, that discrepancy "was enough to cause the currency exchange to pause and think twice about cashing the check. And then when *** they decided to go ahead with negotiating the check *** they did it at their own risk." The court added:

> "[I]t's not a question of anybody being dishonest or anything of that
>
> nature.***
>
> ***
>
> So I'm not talking about any kind of dishonesty or illegality. I'm just simply

saying perhaps a mistake was made."

The trial court entered an order on December 18, 2008, finding in favor of Regent on New Randolph's complaint.

New Randolph filed a motion and requested the entry of sanctions against Regent for its responses to two of its requests to admit. In an order dated April 22, 2009, the trial court imposed sanctions against Regent totaling of $2,203.86 for the response to request number 1, but the court denied the motion for sanctions with respect to request number 3. In the same order, the court entered judgment in favor of Regent on the complaint.

New Randolph appealed from "the trial court's Order of December 18, 2008 and the final judgment entered on April 22, 2009." Regent cross-appealed from the award of sanctions against it for its answer to the request to admit.

## ANALYSIS

### Holder in Due Course

The trial court entered judgment for Regent following a trial. We defer to the trial court's findings of fact, reversing only if the court committed clear error, but we review rulings of law *de novo*. Johnson v. Thomas, 342 Ill. App. 3d 382, 391 (2003).

The trial court awarded the judgment based on its finding of fact that New Randolph did not qualify as a holder in due course of the check. See Atlanta National Bank v. Johnson Tractor Sales, 130 Ill. App. 2d 793, 796 (1971) (question of whether a party is a holder in due course is an issue of fact), citing Foncannon v. Lewis, 327 Ill. 455, 462 (1927). The Uniform Commercial Code defines a holder in due course as:

" the holder of an instrument if:

(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity, and

(2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument ***, and (vi) without notice that any party has a defense or claim in recoupment." 810 ILCS 5/3-302 (West 2006).

The trial court found that New Randolph did not qualify as a holder in due course because the check at issue was "so irregular *** as to call into question its authenticity." However, grounds for suspicion about a check will not always prevent one from taking the check as a holder in due course. Peoria Savings & Loan Ass'n v. Jefferson Trust & Savings Bank, 81 Ill. 2d 461, 471 (1980). Where all of the evidence available to the holder shows that it lacked notice of a defense, it becomes a holder in due course. Peoria Savings, 81 Ill. 2d at 471. " 'To defeat the rights of one dealing with negotiable securities it is not enough to show that he took them under circumstances which ought to excite the suspicion of a prudent man and cause him to make inquiry, but that he had actual knowledge of an infirmity or defect, or of such facts that his failure to make further inquiry would indicate a deliberate desire on his part to evade knowledge because of a belief or fear that

investigation would disclose a vice in the transaction.' " Valley Bank & Trust Co. v. American Utilities, Inc., 415 F. Supp. 298, 301-02 (E.D. Pa. 1976), quoting First National Bank of Blairstown v. Goldberg, 340 Pa. 337, 340, 17 A.2d 377, 378-79 (1941) ; see Grand Western Currency Exchange, Inc. v. A:M Sunrise Construction Co., 163 Ill. App. 3d 51, 56 (1987) (holder acted in a commercially reasonable manner and became holder in due course when it had successfully cashed several checks for payee and it called to verify that check's signer had authority to sign the check).

A federal case involved a similar issue. In McCook County National Bank v. Compton, 558 F.2d 871 (8th Cir. 1977), McCook cashed a check despite several irregularities, including a discrepancy in the amount of the check. McCook contacted Northwestern, the bank on which the payor drew the check, and Northwestern confirmed the correct amount and assured McCook the check was " 'okay to cash.' " McCook, 558 F.2d at 873. The trial court held that McCook did not qualify as a holder in due course. The McCook court said:

"McCook bank was presented with a check that had an obvious $10,000 discrepancy on its face. As any prudent bank would, McCook contacted the Northwestern bank to ascertain the correct amount and whether adequate funds existed to cover the check. Assured by the bank and indirectly by Compton, who issued the check, that the check was 'okay', McCook proceeded to cash the check and issue money orders. There were no remaining irregularities in the instrument itself. Since this court has found no actual notice and insufficient constructive notice from the reporting service, and no other notice at the time the check was cashed, we can find no bad faith or dishonesty on the part of McCook bank in cashing the check.

In sum, while a better judgment concerning the negotiability of the check might have been made we can not find the requisite notice or bad faith that would deprive McCook bank of its status as holder in due course." McCook, 558 F.2d at 877.

See also First National Bank of Cicero v. United States, 664 F. Supp. 1169, 1172 (N.D. Ill. 1987) (irregularities on check imposed on bank a duty to call payor before cashing check).

Here, New Randolph had some grounds for suspecting that the check could be invalid. Regent misspelled Pearson's name, the purpose stated on the check did not match the purpose Pearson described, the check greatly exceeded the amount of prior checks made out to Pearson, and Pearson had only recently renewed her state identification card. However, when it cashed the check, New Randolph also knew that Regent had issued two other checks to Pearson, and those checks had cleared. Most significantly, Arizaga and Keys called Regent and Regent directly confirmed that it issued the check to Pearson for the stated amount.

We agree with the trial court's finding that irregularities involving the check called its authenticity into question. But New Randolph investigated those irregularities in a commercially reasonable manner by calling Regent to verify the check. In this case, unlike McCook, the holder did not rely on an indirect verification from the payor. New Randolph contacted Regent directly, as well as American Chartered Bank. New Randolph might have acted more cautiously and asked more questions of the person who spoke to them when they called Regent. But that person's verification of the check made the decision to cash the check commercially reasonable. We find that the trial court committed clear error when it found that New Randolph was not a holder in due course of

check number 22221. Therefore, we reverse the judgment entered in favor of Regent and remand for entry of judgment in favor of New Randolph for payment of the check.

Sanctions

Next, New Randolph asks us to reverse the denial of sanctions for Regent's response to number 3 of New Randolph's requests to admit. Regent argues that New Randolph's notice of appeal does not permit this court to decide the issue. The notice of appeal lists the judgment order dated April 22, 2009, as the order from which New Randolph appealed. In that order the trial court entered judgment in favor of Regent on the complaint, and it also granted in part and denied in part New Randolph's motion for sanctions against Regent for its responses to requests to admit. Supreme Court Rule 303 (210 Ill. 2d R. 303(b)(2)) "gives the appellant the option of naming *** the entire judgment *** as the subject of his or her appeal." Bank of America, N.A. v. 108 N. State Retail LLC, 401 Ill. App. 3d 158, 169 (2010). We find that New Randolph's notice of appeal complies with Rule 303. 210 Ill. 2d R. 303(b)(2). Therefore, it gives this court jurisdiction to review the propriety of the judgment of April 22, 2009, including the denial of sanctions for the response to number 3 of the requests to admit.

Supreme Court Rule 219 permits the court to impose sanctions for denial of a request to admit, "[u]nless the court finds that there were good reasons for the denial." 210 Ill. 2d R. 219(b). We will not reverse the trial court's decision on a motion for sanctions absent an abuse of discretion. First National Bank of LaGrange v. Lowrey, 375 Ill. App. 3d 181, 218 (2007).

New Randolph asked Regent to admit that check number 22221 "bears an authorized signature of Regent Title." Regent denied the request. Andrews admitted that the signature looked

- 10 -

like the signature of Karen Hendricks, who had authority to sign checks on Regent's behalf. However, the witness did not see Hendricks sign the check and he did not know whether Auson and her coconspirators forged the signature. Neither party presented testimony from Hendricks about the check. Hendricks left Regent to take a job with a California-based corporation.

In Exchange National Bank of Chicago v. DeGraff, 110 Ill. App. 3d 145, 161 (1982), the defendant asked the bank to admit that the defendant signed the document in January 1973. The bank's witness testified that he did not recall the date of signing. The trial court imposed no sanction for denial of the request to admit, and the appellate court affirmed, saying, "we do not find it unreasonable for the Bank not to admit the truth of that which it could not recall." DeGraff, 110 Ill. App. 3d at 162.

Here, similarly, Regent did not know whether Hendricks signed the check. We cannot say that the trial court abused its discretion by refusing to impose sanctions against Regent for its response to request number 3.

Cross-Appeal

Regent cross-appeals from the imposition of sanctions against Regent for its answer to number 1 of the requests to admit. New Randolph asked Regent to admit that "On or about January 11, 2006, Regent Title drew its check number 22221 in the amount of $29,588.31 on American Chartered Bank of Downers Grove, Illinois payable to Charea Paerson." Regent answered:

"Regent denies it drew check number 22221 on American Chartered Bank or

that anyone was authorized to cut such a check to Charea Paerson. Regent admits

Charea Paerson was listed as payee on such numbered check. Regent denies the

remaining allegations in this request to admit."

Regent admitted that it authorized Auson to cut checks drawn on Regent's account. Regent admitted that Auson prepared check number 22221, drawn on Regent's account with American Chartered Bank, and made it payable to Charea Paerson. To show that it was a holder in due course, New Randolph needed to prove that Regent drew the check on Regent's account. We find no abuse of discretion in the trial court's decision to impose sanctions against Regent for its denial of New Randolph's request to admit that it drew check number 22221 on its account with American Chartered Bank.

## CONCLUSION

New Randolph cashed check number 22221 only after calling Regent for verification of the check. Because New Randolph followed commercially reasonable procedures to verify the check before cashing it, New Randolph qualifies as a holder in due course of the check. Accordingly, we reverse the judgment of the trial court and remand for entry of judgment in favor of New Randolph on its claim for payment of the check. The trial court did not abuse its discretion when it sanctioned Regent for one, and only one, of its answers to New Randolph's requests to admit. Therefore, we affirm the denial of sanctions for one response and we affirm the award of sanctions for another response to the requests to admit.

Affirmed in part and reversed in part; cause remanded with instructions.

QUINN, P.J., and MURPHY, J., concur.